## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2021-CV-20623

SHORES GLOBAL, LLC,
a Florida corporation,

       Plaintiff,

v.

NJORD'S ARK A/S, a foreign corporation
located in Sonderborg, Denmark, and
ANDREAS KRENZEN,
an individual residing in the
Kingdom of Denmark,

       Defendants.

_____/

## **COMPLAINT**

    Plaintiff SHORES GLOBAL, LLC, by and through undersigned counsel, hereby files this Complaint against Defendants NJORD'S ARK A/S and ANDREAS KRENZEN, and in support thereof states:

## **INTRODUCTION**

1.    This is an action for breach of contract and injunctive relief.

2.    Plaintiff Shores Global, LLC ("Shores Global," "Plaintiff," or "the Company") is a Florida corporation that supplies the world's leading cruise lines with furniture for its vessels. Since its founding in 2007, Shores Global has outfitted more than two-hundred (200) cruise ships in more than thirty (30) different countries.

3.    Defendant Andreas Krenzen ("Krenzen" or "Plaintiff") is a former employee of Shores Global. Krenzen's employment began in 2016, and on May 1, 2019 he signed an

Employment Agreement with Plaintiff that memorialized the parties' relationship. *See* Employment Agreement, attached hereto as **Exhibit 1**.

4.      Among other things, the Employment Agreement signed by Krenzen contained non-compete, non-solicitation, and non-disclosure provisions.

5.      In signing the contract, Krenzen agreed that he would not: (1) disclose any confidential information he acquired during the course of his employment with Shores Global; (2) solicit current or former clients and/or employees for a period of 18 months following the end of his employment with the Company; or (3) set up any business that competed in the same field as Shores Global for that same 18-month period.

6.      Despite these restrictions, Krenzen left Shores Global at the end of 2019 and immediately set up a competing business in Denmark – Defendant NJORD'S ARK A/S. Krenzen used the confidential information he obtained during his employment with Shores Global to compete with Shores Global in the same field – furniture sales to cruise lines – and began systematically soliciting Plaintiff's former clients.

7.      Krenzen's activities are ongoing and constitute a blatant breach of his employment contract and the restrictive covenants contained therein.

<u>**PARTIES, JURISDICTION AND VENUE**</u>

8.      Plaintiff Shores Global, LLC ("Plaintiff" or "Shores Global") is a Florida corporation with its principal place of business located at 2440 NW 116th Street, Suite 600, Miami, Florida 33167. It is authorized to conduct business in Florida.

9.      Defendant Andreas Krenzen ("Krenzen") is a citizen of the Kingdom of Denmark.

10.     Defendant Njord's Ark A/S ("Njord's Ark") is a company duly organized and existing under the laws of the Kingdom of Denmark, with its principal place of business located in Sonderborg, Denmark.

11.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000.00 and Plaintiff, a citizen of Florida, and Defendants, citizens of a foreign state, are diverse.

12.     Jurisdiction is also proper under Florida's long-arm statute, Fla. Stat. § 48.193(1) and (2), because both Defendants:

a.     Currently solicit clients and customers located in Miami, Florida;

b.     Have committed tortious acts within Florida;

c.     Breached a contract in this State by failing to perform certain acts required by the contract to be performed in Florida; and

d.     Are engaged in substantial and not isolated activity within Florida.

13.     Venue in this District is proper pursuant to 28 U.S.C. § 1397(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

14.     Venue is also proper in this Court because the contract forming the basis of this lawsuit contained a forum selection clause, which states that

"the parties agree that any suit, action, or proceeding – whether in contract, tort, or otherwise – arising out of this Agreement must be brought in a state or federal court or courts located in the State of Florida and in the county of or nearest to Shores Global LLC's principal office[.]"

*See* Exhibit 1.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The Business of Shores Global

15.     Shores Global was founded in 2007 and is a worldwide leader in creating, building, and offering furniture products to hotels and cruise lines throughout the world.

16.     The Company is operated and managed by Susan Sadolin, a Danish citizen who started Shores Global fourteen years ago. Ms. Sadolin serves as the Chief Executive Officer of the Company.

17.     Plaintiff's major customers include Carnival Corporation, Royal Caribbean Cruise Lines, and Norwegian Cruise Lines – all companies with worldwide headquarters in Miami, Florida. MSC Cruises, headquartered in Geneva, Switzerland, is also a major client and source of revenue for Shores Global.

18.     Shores Global's clients also include the major cruise lines' corporate subsidiaries and affiliates.

19.     Approximately 80% of the Company's revenues are derived from its work with cruise lines.

20.     Over the course of the fourteen years Shores Global has operated, it has sought, developed, and made significant investment in its business relationships with these cruise lines, and earned the trust and confidence of its customers in providing top-quality products. These relationships provide Shores Global a key advantage over its competitors, and are at the root of the Company's success.

21.     Not only that, but Plaintiff's work in the cruise line industry has allowed the Company to gain an edge on its competition through its development of confidential information related to the sale of furniture to those cruise lines (the "Confidential Information").

22.     This Confidential Information includes, but is not limited to:

    a.    The names, buying habits, and purchasing practices of Plaintiff's cruise line customers;

    b.    The names of vendors, suppliers, and sub-suppliers Shores Global relies upon to create, build, and sell its furniture;

    c.    Client lists, client contacts, and key individuals working for the cruise lines that the Company utilizes to sell its products;

    d.    The prices the Company charges its clients, or at which it sells its furniture products (both in the past and prospectively);

    e.    The cost of materials for products the Company designs, creates and builds;

    f.    Marketing techniques, methods and other client-driven data Plaintiff relies upon to sell its products to the cruise lines;

    g.    Compensation and/or revenue derived from each of the particular cruise lines; and

    h.    Compensation paid to Plaintiff's employees, to include bonus structures and incentive plans.

23.     Plaintiff's possession of this Confidential Information is critical to its business and its continuing operation, and Shores Global relies on that confidentiality to maintain its edge over its competition.

### The Governing Employment Agreement

24.     To protect this Confidential Information, Shores Global requires all employees to sign contractual agreements that contain restrictive covenants.

25.     The standard employment agreements contain non-compete, non-solicitation and non-disclosure provisions that, among other things, prohibit any employee from sharing Plaintiff's Confidential Information during the course of his or her employment with Shores Global, and for eighteen (18) months after any such employment ends (the "Restricted Period").

26.     The non-compete provision reads as follows:

Employee acknowledges access to Confidential Information and a position of trust and confidence with Company. In respect of this, Employee **agrees not to compete against Company for the Restricted Period.** The Restricted Period includes the period of Employee's employment with Company and an additional period of 18 consecutive months beginning on the last day of the period of Employee's employment with Company. During the Restricted Period, the Employee must not: provide services or advice to any Competitor; affiliate with any Competitor as an employee, partner, consultant or otherwise; or **directly or indirectly, through one or more of any of their respective Affiliates, own, manage, operate, control, or participate in the ownership, management, operation, or control of any Competitor or Competitor's division or other business segment.**

For purposes of this Agreement, Competitor means any other person directly or indirectly engaged, in whole or in part, in a business the same as or similar to the business of Company or any subsidiary of Company. **This specifically includes persons engaged in the business of selling furniture to cruise lines and hotels in any state, commonwealth, or other jurisdiction of the United States and, additionally, from all other countries of the world where the Company derives at least five percent (5%) of its gross revenues from such geographic area prior to the date of the termination of [the employee's] relationship with the Company.**

27.     The non-disclosure clause states:

Without limiting the applicability of any other agreement to which Employee is subject, Employee **may not directly or indirectly disclose or use any Confidential Information at any time during or after the Employee's employment with Company.** This restriction includes the use of Confidential Information for personal, commercial, or proprietary advantage or profit.

28.     The first of two non-solicitation provision relates to the hiring of Plaintiff's

employees, and provides:

Employee agrees not to directly or indirectly hire, solicit, or encourage any other person to hire or solicit any individual who has been employed by Company or any subsidiary of Company within 18 months before the hiring date or solicitation, or encourage any such individual to leave that employment.

29.     The second of those provisions relates to the solicitation of clients:

Employee agrees not to directly or indirectly solicit, entice, or attempt to solicit or entice **any clients, customers, or suppliers of Company or any subsidiary of Company to divert their business or services from the Company or any subsidiary of Company during the Restricted Period.**

30.     Employment with Shores Global is contingent on each employee agreeing to the restrictive covenants contained in the employment agreement and signing the contract containing same.

### Krenzen Begins Working for Shores Global

31.     Defendant began working for Shores Global's Danish operation in 2016.

32.     In 2019, Krenzen notified Plaintiff that he wished to be transferred to Plaintiff's Miami office, as many of the cruise lines – and, in turn, Plaintiff's largest customers – are headquartered here.

33.     Plaintiff spent approximately $10,000.00 to secure the appropriate immigration visas that would allow Defendant to travel to the United States and work at Shores Global's Miami headquarters. The costs incurred by Plaintiff included the retention of an attorney to make certain all the immigration requirements were met, and Krenzen's travel costs to and from the United States during the pendency of his application.

34.     While Shores Global worked to obtain the proper visas, it also needed to provide the appropriate authorities with business plans concerning the company's operation and its customer presence throughout the world. Krenzen had access to this business plan and read it while he waited for his visa paperwork to be finalized.

35.     By May 1, 2019, the appropriate work visas had been secured, and Krenzen executed the Employment Agreement that would govern his employment with Plaintiff's Miami operation. *See* Exhibit 1. That Agreement contained the non-compete, non-disclosure and non-solicitation provisions discussed in Paragraphs 26-29, *supra*, which were included to protect Plaintiff's Confidential Information from being disseminated to competitors and the public at large.

36.     Krenzen would be employed by Shores Global as an Executive Assistant in the Company's Miami Sales Department. In this role, Krenzen would be tasked with securing orders and making sales with Shores Global's current and prospective cruise line clients.

37.     On top of the salary Shores Global paid Krenzen, the Company invested heavily in his employment and introduced him to clients, suppliers and sub-suppliers within the industry. Indeed, Sadolin hired Krenzen to be her "right hand man" in Miami, and taught him everything that he would need to know to effectively sell products to the cruise lines using the Confidential Information she had acquired over her fourteen-year career in the industry.

38.     Without Sadolin's guidance, Krenzen would have never developed the skills necessary to sell furniture to the cruise lines; he had no experience in the maritime furniture sales prior to beginning his work with the Company in 2016.

39.     During the course of his employment with Plaintiff, Krenzen had access to Plaintiff's Confidential Information, which included: (a) customer lists; (b) the prices charged by Plaintiff for its goods and services; (c) the buying habits of the individual cruise lines; (d) Shores Global's process for submitting "bids" to its customers; (d) the vendors and suppliers Plaintiff utilized to produce its goods for sale; (e) pricing information for Plaintiff's products; and (f) compensation paid to other employees at Shores Global.

40.     Additionally, Krenzen received highly-specialized on-the-job training regarding the Company's management, systems, logistics, processes, pricing models and practices, and was given the overall "know-how" to sell quality furniture products to the cruise lines – all of which go to the very heart of the Company's success.

41.     Given the sensitive nature of the Confidential Information Krenzen had access to and was entrusted with, Shores Global made efforts to ensure that Confidential Information would not become available to a competitor or the public at large.

42.     Shores Global took steps to protect the dissemination of the Confidential Information Krenzen had access to during the course of his employment by requiring him to sign the Employment Agreement, which contained the various restrictive covenants discussed above.

43.     The Company would not have hired Krenzen if he refused to agree to the restrictive covenants, or had any idea he intended to violate those provisions upon the completion of his employment with the Company.

44.     The Agreement, and the restrictive covenants contained therein, are reasonably necessary to protect Plaintiff's legitimate business interests, including – among other things – its trade secrets, valuable confidential business information, the substantial relationships it has built with the cruise lines, its relationships with prospective and existing suppliers and vendors, and its goodwill.

**Krenzen Resigns from Shores Global –
and Immediately Starts a Competing Business**

45.     Without warning, Krenzen resigned from Shores Global effective January 1, 2020 and promptly moved back to Denmark.

46.     After receiving his letter of resignation, Shores Global attempted to contact Krenzen on several occasions in order to secure the return of any Confidential Information he had in his possession at the time of his departure. Plaintiff ignored these requests.

47.     Shores Global continued to attempt to contact Krenzen, reminding him of his obligations under the terms of the Employment Agreement and hoping to arrange a meeting in order to have the confidential materials returned. These requests were also ignored.

48.    Unknown to Shores Global at this time, Krenzen was using the Confidential Information he learned during his time with Shores Global – to include the specialized training provided by Sadolin in Miami – to form a competing business.

49.    Upon his return to Denmark, Krenzen immediately created, formed, and began operating Njord's Ark, a company that practices in the *exact same* line of business as Shores Global.



50.    Njord's Ark sells furniture products to cruise lines, and is therefore competing directly with Shores Global for the same clients.

51.    The company website for Njord's Ark makes these facts abundantly clear. Indeed, the "About Us" section of that website, found at https://njordsark.com/about-us/, outright admits it:

# NJORDS ARK
### D E N M A R K

## About Us

**OUR MISSION**

We are *Danes*, with saltwater in the veins, committed to deliver furniture to the cruise line industry that inspire designers, exceed owners' expectations, and make guests come back.

In an industry where trust is everything, it is our vision to be recognized as the leading team that delivers cruise quality design furniture in time and budget.

52.    Krenzen is listed as Njord's Ark's Chief Executive Officer on the company's website:

## Andreas Krenzen

CEO - Cruise & Organization

With 10 years dedicated to the cruise industry, Andreas has an industry knowledge beyond the ordinary. He has, with great success, created a personal brand that reflects trust, reliability and delivery security. The crucial factors in the industry.

Due to his in-depth knowledge of the industry as well as his strong business mind-set combined with his education as Cand.merc (Organization & Strategy), Andreas has a unique ability to successfully complete the coordination of very comprehensive and complex new construction and renovation projects.

This favorable position in the market has not come overnight. That's privilege.

53.     The "in depth knowledge of the industry" he refers to relates entirely to the Confidential Information he misappropriated from Shores Global.

54.     Even worse, when looking at the website history for the creation of Njord's Ark, Plaintiff discovered that Krenzen registered the URL for the competing business in October of 2019 – during a time in which he was still employed with Shores Global.

55.     Thus, during a time in which he should have been looking out for the best interests of his employer, Krenzen was instead seeking to steal clients once his newly-formed venture was operational in Denmark.

56.     Shores Global also learned that Krenzen had attempted to contact one of its main suppliers in Indonesia. Krenzen contacted this supplier in the hopes of setting up a meeting to build products for Njord's Ark, and to have the supplier assist him with the construction of furniture he intended to offer to the cruise lines through an upcoming bidding process.

57.     Shores Global later learned that the Indonesian supplier eventually would become a shareholder in Njord's Ark.

58.     Further, after leaving Shores Global, Krenzen also contacted two other employees working for Plaintiff. Both those employees are now working with Krenzen and Njord's Ark, and both are shareholders in Krenzen's competing business.

**Defendants' Activities Are In Direct Breach of the Employment Agreement**

59.     In his role as Chief Executive Officer at Njord's Ark, Krenzen is using the Confidential Information he obtained during his employment with the Company to submit quotes for work with the cruise lines.

60.     Defendant is also seeking to utilize the client contacts he gained access to during his employment with Shores Global to solicit additional business.

61.     Krenzen breached his Employment Agreement with Shores Global by (a) setting up a competitive business within 18 months of the last date of his employment with Plaintiff; (b) soliciting clients, customers, and former employees of the Company for his new venture; and (c) utilizing the Confidential Information he had access to during the course of his employment with Shores Global to obtain new customers for his company.

62.     Krenzen's actions damaged, and continue to damage, Shores Global as a result of his formation and operation of Njord's Ark. Using the Confidential Information he gained access to during his employment with Shores Global – which includes Plaintiff's pricing methodologies, client lists, customer needs, and upcoming projects – Krenzen and Njord's Ark are "undercutting" bids for the provision of furniture for a variety of Shores Global's cruise line clients.

63.     For example, in a bid prepared by Shores Global in August of 2020, Plaintiff sought to secure a contract with Quark Expeditions, a cruise line operating out of Seattle, Washington, worth approximately $90,000.00.

64.     Krenzen knows the prices charged by Shores Global. Equipped with that knowledge, and knowing the size of the project as requested by Quark, Defendants would be able to determine the total cost of Plaintiff's proposal – and use that information to charge lower prices when submitting its own bid.

65.     Indeed, after Shores Global submitted its proposal to Quark, it ultimately was not awarded the contract. After this rejection, Plaintiff learned through social media postings made by Defendants that Njord's Ark had secured the contract, undercutting the bid by relying on Krenzen's knowledge of Shores Global's pricing methodologies.

66.     Additional upcoming bids are threatened by Krenzen's knowledge of Plaintiff's Confidential Information and are only available to Njord's Ark via his failure to abide by the contractual agreement he signed with Shores Global.

67.     This lawsuit is therefore **necessary** and **critical** to protecting Shores Global's legitimate business interests and has been prompted by Krenzen's flagrant violation of the Employment Agreement he signed with the Company.

**COUNT I**
**Breach of Contract**
**(Against Krenzen)**

68.     Shores Global repeats and realleges the allegations preceding the first count of this Complaint as though fully set forth herein.

**Breach of the Non-Competition Covenant**

69.     The Agreement governing Krenzen's employment prohibits Defendant from "**compet[ing] against Company for the Restricted Period.** The Restricted Period includes the period of Employee's employment with Company and an **additional period of 18 consecutive months** beginning on the last day of the period of Employee's employment with Company. During

the Restricted Period, the Employee must not: provide services or advice to any Competitor; affiliate with any Competitor as an employee, partner, consultant or otherwise; or directly or indirectly, through one or more of any of their respective Affiliates, own, manage, operate, control, or **participate in the ownership, management, operation, or control of any Competitor** or Competitor's division or other business segment. *See* Exhibit 1, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement, Section 6 (emphasis added).

70.     Defendant's employment with Shores Global ended on January 1, 2020. Therefore, his activities currently fall within the 18-month Restricted Period.

71.     Defendant formed and now operates a competing business – Njord's Ark – that offers the same exact services and products as Shores Global.

72.     Krenzen will continue to do so absent this Court's intervention.

73.     Krenzen's activities are likewise within the geographic scope of the restrictive covenant, as Shores Global derives more than 5% of its gross revenues from cruise lines operating in and around Denmark.

74.     Because Krenzen is now operating a competing business within the 18-month Restrictive Period, Krenzen has breached the non-competition covenant included in the governing Employment Agreement and must be forced to cease all activities related to that company's activities.

**Breach of the Non-Disclosure Covenant**

75.     The Employment Agreement also precludes Krenzen from "directly or indirectly disclos[ing] or us[ing] any Confidential Information at any time during or after the Employee's employment with Company. This restriction includes the use of Confidential Information for personal, commercial, or proprietary advantage or profit." *See id.* at Section 2.

76.     Krenzen has used, and continues to use, Confidential Information obtained during his employment with Shores Global for personal, commercial, and proprietary advantage and/or profit.

77.     The Confidential Information utilized by Krenzen through his operation of Njord's Ark includes Shores Global's (a) customer and client lists; (b) prices charged by Plaintiff for its goods and services; (c) the buying habits of the individual cruise lines; (d) Shores Global's process for submitting "bids" and quotations to its customers; (d) the identities of the vendors and suppliers Plaintiff utilized to procure goods for sale; (e) pricing information for Plaintiff's products.

78.     Krenzen uses this Confidential Information to gain an advantage over Plaintiff by, among other things, undercutting proposals and/or bids made by Shores Global to provide furniture to cruise line vessels.

79.     In addition to undercutting bids, Krenzen is using the clients lists, marketing techniques, customer contacts and the knowledge of the cruise lines' buying habits – all of which he obtained while employed with Shores Global – to benefit Njord's Ark commercially.

80.     Because Krenzen is improperly utilizing Plaintiff's Confidential Information to operate the competing business, Defendant has breached the non-competition covenant included in the governing Employment Agreement.

**Breach of the Non-Solicitation Covenant**

81.     Krenzen's Employment Agreement with Shores Global also precluded him from soliciting Plaintiff's former clients, vendors, suppliers, and employees. *See id*. at Section 8 and 9. These provisions are effective for the 18-month period following the termination of his employment.

82.     Upon information and belief, Krenzen has solicited two (2) employees from Shores Global to work for his new, competing business.

83.     Additionally, Plaintiff has contacted several clients, vendors, and suppliers of Shores Global in connection with the operation of his competing business, Njord's Ark.

84.     The 18-month Restrictive Period has not yet expired, as Krenzen last day of employment with Plaintiff occurred on January 1, 2020.

85.     The improper and illicit solicitation of Plaintiff's employees, clients, customers, vendors and suppliers constitutes a breach of the non-solicitation covenant included in the governing Employment Agreement.

**The Agreement is Enforceable**

86.     The Agreement executed by Krenzen is reasonable and enforceable.

87.     The restrictive covenants contained in the Agreement, as acknowledged and agreed to by Krenzen when he signed the contract, are reasonably necessary and narrowly tailored with respect to subject matter, duration and geographical area, to protect Shores Global's legitimate business interests, as more specifically pled in the preceding paragraphs.

88.     The Agreement is further reasonable in time (18 months), area (the geographic areas and clients serviced by the Company) and line of business (persons or entities engaged in the business of selling furniture to cruise lines and hotels).

89.     These breaches of the Employment Agreement have damaged, and continue to cause damage, to Plaintiff.

90.     All conditions precedent to this action have been met or waived.

WHEREFORE, Plaintiff SHORES GLOBAL, LLC respectfully requests that judgment be entered in its favor and against Defendant Krenzen for (a) damages, including, but not limited to,

actual, consequential, presumed, and punitive damages, (b) attorneys' fees and costs, and (c) any and all such other and further relief as this Court deems just and proper.

**COUNT II**
**Tortious Interference with Business Relationships**
**(Against all Defendants)**

91.     Shores Global repeats and realleges the allegations preceding the first count of this Complaint as though fully set forth herein.

92.     At all material times, Defendants had actual knowledge of Shores Global's customers and prospective customers, including but not limited to Carnival Cruise Lines, Royal Caribbean Cruise Lines, Norwegian Cruise Lines, and all corporate subsidiaries and affiliates.

93.     Plaintiff possessed business relationships with these cruise lines.

94.     Defendants knew of the existence of these relationships.

95.     Defendants intentionally interfered with the advantageous business relationships Shores Global possessed with these cruise lines by soliciting the same projects Plaintiff was soliciting with those clients and customers.

96.     Defendants had no justification for or privilege to interfere with those business relationships.

97.     Had Defendants not interfered with the prospective business relationships between Plaintiff and its clients and customers, certain contracts between Shores Global and those customers would have been completed.

98.     Defendants' tortious interference with Shores Global's prospective business relationships has resulted in and is the proximate cause of damages to Plaintiff.

WHEREFORE, Plaintiff SHORES GLOBAL, LLC respectfully requests that judgment be entered in its favor and against Defendant Krenzen for (a) damages, including, but not limited to,

actual, consequential, presumed, and punitive damages, (b) attorneys' fees and costs, and (c) any and all such other and further relief as this Court deems just and proper.

### COUNT III
### <u>Misappropriation of Trade Secrets</u>
### (Against all Defendants)

99.     Shores Global repeats and realleges the allegations preceding the first count of this Complaint as though fully set forth herein.

100.    Defendants' use of Plaintiff's Confidential Information violates Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 *et seq.*

101.    Plaintiff possesses "trade secrets" in the form of Confidential Information obtained as a result of the operation of its business. These trade secrets include:

  a.   The names, buying habits, and purchasing practices of Plaintiff's cruise line customers;

  b.   The names of vendors, suppliers, and sub-suppliers Shores Global relies upon to create, build, and sell its furniture;

  c.   Client lists, client contacts, and key individuals working for the cruise lines that the Company utilizes to sell its products;

  d.   The prices the Company charges its clients, or at which it sells its furniture products (both in the past and prospectively);

  e.   The cost of materials for products the Company designs, creates and builds;

  f.   Marketing plans, techniques, methods and other client-driven data Plaintiff relies upon to sell its products to the cruise lines;

  g.   Compensation and/or revenue derived from each of the particular cruise lines; and

  h.   Compensation paid to Plaintiff's employees, to include bonus structures and incentive plans.

102.    Shores Global derives independent economic value from this Confidential Information not being generally known or readily ascertainable, as the Confidential Information

allows it to maintain a competitive edge over its competition when bidding for contracts and other services.

103.    Shores Global also takes reasonable efforts to maintain the secrecy of its Confidential Information, including the fact that it requires all employees to sign Employment Agreements that includes non-disclosure provisions.

104.    Krenzen misappropriated the Confidential Information by improper means, breaching the non-disclosure provisions of his Employment Agreement with Shores Global and forming Njord's Ark, a direct competitor offering furniture for sale to cruise lines.

105.    Krenzen is using Plaintiff's trade secrets to solicit Shores Global's clients and former employees. Further, his knowledge of pricing information he learned from his time working for Plaintiff is being used to "underbid" on contract submissions, and continues to do so at the present time.

106.    The use of the trade secrets allowed Njord's Ark to "underbid" Shores Global for a furnishing contract worth approximately $90,000.00. These damages have occurred, and will continue to occur in the future.

107.    Njord's Ark is likewise misappropriating Plaintiff's trade secrets because Krenzen, as the company's CEO, is acting on behalf of the corporation when he engages in such unfair competition. Krenzen's illicit utilization of the trade secrets at issue are therefore imputed to Njord's Ark.

108.    Shoes Global will continue to suffer irreparably injury if temporary and permanent injunctive relief is not entered.

109.    As a direct and proximate result of Defendants' past and continuing misappropriation of Shores Global's trade secrets, Plaintiff has been damaged.

WHEREFORE, Plaintiff SHORES GLOBAL, LLC respectfully requests that judgment be entered in its favor and against Defendant Krenzen for (a) damages, including, but not limited to, actual, consequential, presumed, and punitive damages, (b) attorneys' fees and costs, and (c) any and all such other and further relief as this Court deems just and proper.

### DEMAND FOR INJUNCTIVE RELIEF

110.    Unless Krenzen is enjoined from improperly competing, improperly soliciting customers, suppliers, vendors and employees (directly or indirectly), and from disclosing Plaintiff's Confidential Information, the company will suffer immediate and irreparable harm.

111.    To date, Krenzen has refused to refrain from violating the Employment Agreement, and his continuous breach of that Agreement subjects Shores Global to suffer irreparable harm, to which there is no adequate remedy at law.

112.    Entry of an injunction will serve the public interest in protection and enforcement of contractual and property rights.

113.    Plaintiff can establish a substantial likelihood of success on the merits.

114.    Plaintiff continues to suffer significant damages as result of Krenzen's actions.

WHEREFORE, Plaintiff SHORES GLOBAL, LLC respectfully requests the following relief:

    a)    Entry of a preliminary injunction, pending final adjudication and permanent relief, restraining Krenzen, Njord's Ark, and any individuals, entities, or companies associated or working in conjunction with them, from directly or indirectly operating, running, or controlling any company engaged in the business of selling furniture to cruise lines and hotels for a period of eighteen (18) months;

b) Entry of a permanent injunction restraining Krenzen and any individuals, entities, or companies associated or working in conjunction with him, from directly or indirectly operating, running, or controlling any company engaged in the business of selling furniture to cruise lines and hotels for a period of eighteen (18) months;

c) Awarding damages for injury to Plaintiff SHORES GLOBAL LLC in an amount to be determined by the Court; and

d) Interest, attorneys' fees, and costs, in addition to any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all issues so triable.

Dated: February 15, 2021

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878

By: */s/ Andrew E. Beaulieu*
Jeffrey W. Gutchess, Esq.
Florida Bar No. 702641
jeff@axslawgroup.com
Andrew E. Beaulieu, Esq.
Florida Bar No. 115097
andy@axslawgroup.com
eservice@axslawgroup.com
*Counsel for Plaintiff*