UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20623-SINGHAL/DAMIAN

SHORES GLOBAL, LLC,

      Plaintiff,

v.

NJORD'S ARK A/S and
ANDREAS KRENZEN,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION AND MEMORANDUM OF LAW
TO DISMISS AMENDED COMPLAINT [ECF NO. 59]**

THIS CAUSE is before the Court on Defendants, Njord's Ark A/S ("Njord's") and Andreas Krenzen's ("Krenzen") (collectively, "Defendants"), Motion to Dismiss Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), filed May 26, 2022 [ECF No. 59] (the "Motion"). This Motion was referred to the undersigned by the Honorable Marcia G. Cooke,[1] United States District Judge, for a Report and Recommendation. [ECF No. 61]. *See* 28 U.S.C. § 636(b)(1)(B).

In this lawsuit, Plaintiff, Shores Global, LLC ("Plaintiff" or "Shores Global"), alleges its former employee, Defendant Krenzen, took its confidential information and trade secrets, along with other Shores Global employees, and used them to start his own competitor business, Defendant Njord's, in Denmark. *See generally* [ECF No. 55] ("Am. Compl."). According to Shores Global, in doing so, Krenzen and Njord's, individually, as aiders and abettors, and as co-conspirators, breached an employment agreement, a non-

---

[1] The case was subsequently reassigned to the Honorable Raag Singhal, United States District Judge, for all further proceedings. [ECF No. 78].

compete agreement, and trade secret laws, and tortiously interfered with Shores Global's business relationships. *Id.* As discussed below, Defendants seek dismissal of the Amended Complaint based on lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. *See generally* Motion to Dismiss [ECF No. 59].

The undersigned has reviewed the parties' memoranda [ECF Nos. 59, 66, and 71], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, it is recommended that Defendants' Motion be granted in part and denied in part.

## I.   BACKGROUND

### A.  Factual Allegations

Shores Global makes the following allegations in the Amended Complaint, which the Court accepts as true for purposes of determining the Motion.

In approximately 2016, Krenzen, a Danish citizen, began working at Plaintiff's satellite office in Denmark. Am. Compl. at ¶¶ 9, 37. In approximately May 2019, Krenzen accepted a position with Shores Global at its headquarters in Miami, Florida. *Id.* at ¶ 38. According to Shores Global, it assisted Krenzen with his move to South Florida by securing an attorney to assist in getting him the appropriate immigration visas and paying Krenzen's travel costs to and from the United States. *Id.* at ¶¶ 39–40.

Although the parties dispute the circumstances under which Krenzen executed the agreements at issue in this lawsuit, Shores Global alleges in the Amended Complaint that by May 1, 2019, "Krenzen executed the Employment Agreement that would govern his employment with Plaintiff's Miami operation, as well as the Non-Competition, and Non-Solicitation Agreement that were critical in protecting Plaintiff's Confidential Information from being disseminated to competitors and the public at large." *Id.* at ¶ 41. Shores Global

attaches a copy of the Employment and Non-Disclosure/Non-Competition/Non-Solicitation Agreements to the Amended Complaint. [ECF No. 55-1]. Both agreements include venue and jurisdiction selection clauses, discussed in greater detail below, which provide that the parties agreed to venue and personal jurisdiction in Florida and to the application of Florida law for all disputes arising out of the agreements. *Id*. at 11, 23.

Shores Global alleges that Krenzen's new position at its Miami headquarters provided him access to "Plaintiff's most important trade secrets[,]" as well as confidential information, including customer lists; the prices it charged for goods and services; the buying habits of its customers; its detailed process for submitting "bids" to its customers; the vendors and suppliers it utilized to produce its goods for sale; the pricing information for its products; and the compensation it paid to other employees. Am. Compl. at ¶¶ 42, 48. Shores Global also alleges Krenzen received "highly specialized on-the-job training regarding the Plaintiff's management, systems, logistics, processes, pricing models and practices, and was given the overall 'know-how' to sell quality furniture products to the cruise lines, all of which go to the very heart of Plaintiff's success." *Id*. at ¶ 49.

According to the Amended Complaint, while Krenzen was employed by Shores Global and still living and working in Miami, Florida, he executed a scheme to create and operate a competing business, Defendant Njord's, but that he intentionally did not formally incorporate Njord's until he returned to Denmark in an effort to evade this Court's jurisdiction. *Id*. at ¶¶ 52–53. Krenzen resigned from Shores Global effective January 1, 2020. *Id*. at ¶ 56.

### B. Procedural Background

On February 15, 2021, Shores Global filed the original Complaint asserting three claims: (1) breach of contract; (2) tortious interference with business relationships; and (3)

misappropriation of trade secrets. [ECF No. 1]. On August 2, 2021, Defendants filed a motion to dismiss on grounds of lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. [ECF No. 26]. Defendants later filed a motion to stay discovery pending determination of the motion to dismiss and a motion for protective order from Plaintiff's discovery requests. [ECF Nos. 34 and 41]. On December 1, 2021, the Court granted the motion for protective order, stayed discovery pending a ruling on the motion to dismiss, and denied as moot the motion to stay discovery. [ECF Nos. 42 and 43]. Discovery has been stayed in this case since that time.

After the original motion to dismiss was fully briefed, on March 29, 2022, the Court denied the motion without prejudice and directed the parties to submit additional briefing on issues related, generally, to specific personal jurisdiction and tortious interference. [ECF No. 48]. After Defendants filed supplemental briefing pursuant to the Court's March 29, 2022 Order, Plaintiff requested leave to amend its Complaint, following which it filed the Amended Complaint on April 19, 2022. [ECF No. 55]. The Amended Complaint asserts four causes of action: (1) Breach of Contract and Aiding and Abetting Breach of Contract; (2) Tortious Interference With Business Relationships; (3) Misappropriation of Trade Secrets; and (4) Civil Conspiracy. *Id*.

Defendants filed the Motion to Dismiss the Amended Complaint on April 26, 2022, again arguing lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. [ECF No. 59]. In the Motion, Defendants also argue that Plaintiff added allegations to the Amended Complaint to correct issues with personal jurisdiction and that the newly added allegations contradict allegations in the original Complaint and should, therefore, not be considered. The undersigned addresses Defendants' arguments below.

## II.    APPLICABLE LEGAL STANDARDS

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *S.O.S. Res. Servs., Inc. v. Bowers*, No. 14-22789-Civ, 2015 WL 2415332, at *2 (S.D. Fla. May 21, 2015) (Cooke, J.) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011)).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over a nonresident defendant. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). In other words, "[t]he plaintiff bears the initial burden of alleging sufficient jurisdictional facts to make a *prima facie* case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden." *Id.* (citing *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff establishes a *prima facie* case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

A federal court sitting in diversity, as in this case, undertakes a two-step inquiry to determine whether personal jurisdiction exists. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). First, the Court determines whether the exercise of jurisdiction comports with the long-arm statute of the forum state (which defines the exercise of personal jurisdiction under state law). Second, the Court determines whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A); *Mazer*, 556 F.3d at 1274. The reach of the Florida long-arm statute is a question of Florida law; therefore, federal courts construe the long-arm statute as they believe the Florida Supreme Court would. *Id.* (citation

omitted). In the absence of authority from the Florida Supreme Court, federal courts look to the Florida district courts of appeal. *Id.* at 1274–75 (citation omitted).

At this stage, the Court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp.*, 216 F.3d at 1291. If the defendant refutes personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The Court construes all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

## III.   DISCUSSION

With the foregoing in mind, the undersigned addresses the issues raised in Defendants' Motion to Dismiss. Defendants raise the following four general issues: (1) whether the Amended Complaint includes allegations that contradict allegations in the original Complaint such that those allegations should be disregarded; (2) whether this Court may exercise personal jurisdiction over both Defendants; (3) whether the case should be dismissed on *forum non conveniens* grounds; and (4) whether the Amended Complaint adequately states a claim for each of the causes of action alleged.

### A. Whether Inconsistent Allegations In The Amended Complaint Warrant Disregarding Such Allegations

Defendants aver that Plaintiff added several inconsistent allegations to the Amended Complaint in an "attempt to manufacture personal jurisdiction where none exists[,]" and, therefore, Defendants request the Court disregard the inconsistent statements. Mot. at 4. Plaintiff responds that neither the facts nor the law support disregarding any allegations in the Amended Complaint but that, instead, the prior pleading is abandoned by amendment. Resp. at 23–24.

In *Rubinstein v. Keshet Inter Vivos Trust*, relied on by Defendants, Judge Torres addressed the general rule governing amended pleadings superseding former pleadings:

> Generally speaking, "[a]n amended pleading supersedes the former pleading," as "the original pleading is abandoned by the amendment and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami–Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). This means that "facts not incorporated into the amended pleading . . . cannot be considered by the court on a motion to dismiss the amended complaint." *Santana v. Cal. Dep't of Corr. & Rehab.*, 2010 WL 4176364, at *7 (N.D. Cal. Oct. 19, 2010) (citation and quotation marks omitted). However, the rule governing amended pleadings superseding former pleadings is a "general" one. *Pintando*, 501 F.3d at 1243. For example, a plaintiff may not directly contradict the facts set forth in an original complaint in a[ ] "transparent attempt . . . to amend his pleading[s] in order to avoid a dispositive defense" raised by a defendant and where the amended complaint directly contradicts the original complaint. *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008). In these circumstances, a court may "disregard the contradictory and manipulated allegations of an amended pleading." *Barris v. Hamilton*, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999).

No. 17-61019-CIV, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018) (Torres, J.), *report and recommendation adopted*, 2018 WL 8899004 (S.D. Fla. Nov. 15, 2018) (Williams, J.). In that case, the plaintiffs took issue with the court having taken judicial notice of publicly available records which contradicted the amended complaint, while at the same time the plaintiffs attached selected portions of those records which supported their allegations. *Rubinstein*,

2018 WL 8899230, at *5. Further, the plaintiffs omitted numerous exhibits which had been attached to the prior complaint, but which undermined the allegations in the amended complaint. Defendants also cite *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008). In *Colliton*, the plaintiff asserted in his original complaint, exhibits, and other pretrial motions that he had been employed as an attorney with the defendant law firm, but, after the court found his claims were barred because he worked as an attorney, plaintiff alleged in an amended complaint that he was actually employed as a specialist with the firm and that his work as a specialist was 85% of what he did for the firm despite never having mentioned such work before the amended complaint. *Id.* at *1. There, the court held that the change was "a transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive defense raised by [the defendant]." *Id.* at *6. The court explained, "Where a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Id.* (quoting *Wallace v. N.Y. City Dep't of Corr.*, No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)).

In the instant case, Defendants claim Plaintiff has included contradictory allegations in the Amended Complaint designed to show that Defendants engaged in relevant conduct while in Florida or directed to Florida in order to establish personal jurisdiction.

Defendants cite numerous examples of what they view as directly contradictory allegations. Specifically, with regard to setting up Defendant Njord's, Defendants claim the original complaint alleged that Defendant Krenzen created Njord's after Krenzen quit and moved back to Denmark ("Krenzen left Shores Global … and immediately set up a competing business in Denmark." Compl. at ¶ 6. "Upon his return to Denmark, Krenzen

8

immediately created, formed, and began operating Njord's Ark." *Id.* at ¶ 49). On the other hand, the Amended Complaint alleges Krenzen "set up" a company, registered a website, and "began" soliciting clients, employees, and vendors for the company; that he "executed his scheme ... to create and operate a competing business…"; "performed pre-incorporation acts"; "help[ed] form a business"; "began the process of setting up a competing business…"; and "began creating and promoting Njord's Ark" while he was still living and working in Miami, Florida. Am. Compl. at ¶¶ 5, 52–53, 55, 57–58; Mot. at 7–8. Similarly, with regard to soliciting employees, the original complaint alleges Krenzen contacted two other employees working for Plaintiff "after leaving Shores Global," whereas, the Amended Complaint alleges Krenzen "had solicited" two other employees "before leaving Miami"; and he "poached" three employees "while living and working for Plaintiff in Florida." *Compare* Compl. at ¶ 58 *with* Am. Compl. at ¶¶ 6, 58(c); *see also* Mot. at 8. As to soliciting clients, the original complaint refers to Krenzen seeking to steal clients "once his newly-formed venture was operational in Denmark" and contacting clients "in connection with the operation" of the new business, whereas the Amended Complaint alleges Krenzen "began interfering with" Plaintiff's suppliers while living and working in Florida. *Compare* Compl. at ¶¶ 55, 83 *with* Am. Compl. at ¶ 58(d); *see also* Mot. at 9. Defendants also cite to new allegations in the Amended Complaint that Krenzen had planned to steal Plaintiff's trade secrets since before he started working for Plaintiff. Mot. at 9–10. Finally, Defendants point out that the Amended Complaint alleges Krenzen "rebuffed Plaintiff's requests to return Plaintiff's Confidential Information" while working in Miami, Florida whereas the original complaint alleges Plaintiff asked Krenzen to return Confidential Information "after receiving his letter of resignation." *Id.*

9

The undersigned finds that the allegations in the Amended Complaint are not directly contradictory to the allegations in the original complaint and do not rise to the level of blatant changes or contradictions like those at issue in the *Rubinstein* and *Cotillon* cases. The issue boils down to when Krenzen engaged in the conduct at issue in the Amended Complaint (*i.e.*, setting up a competing business, soliciting clients and employees, and misappropriating trade secrets and confidential information). Plaintiff did not allege in the original pleading that Krenzen *only* engaged in such conduct after he returned to Denmark. Reading the original pleading and the Amended Complaint together, it appears Plaintiff is alleging that Krenzen engaged in some of the conduct, or at least planted the seeds, while in Miami, Florida but continued and took further steps when he returned to Denmark. To be sure, the supplemental allegations certainly help Plaintiff's efforts to establish personal jurisdiction, but they are not a blatant contradiction of allegations pled in the original complaint warranting disregard by the Court.

Therefore, the undersigned finds Defendants have not demonstrated a basis to disregard the cited allegations in the Amended Complaint on grounds they contradict allegations in the original complaint.

### B. Whether Defendants Are Subject To Personal Jurisdiction In This Court

Defendants, who are residents of Denmark, seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) based on a lack of personal jurisdiction. *See* Mot. at 10–11. Defendants argue the allegations in the Amended Complaint are insufficient to support the Court's exercise of specific or general jurisdiction. In support of dismissal, Defendants submitted the Declaration of Defendant Krenzen. [ECF No. 59-1 ("Krenzen Decl.")].

Plaintiff responds that Defendants are subject to specific jurisdiction under Florida's long-arm statute pursuant to Section 48.193(1)(a)(7), based on Krenzen's failure to perform

acts required by contract to be performed in Florida (which Defendant Njord's allegedly aided and abetted), and pursuant to Section 48.193(1)(a)(2), based on both Defendants' commissions of tortious acts within the State. Resp. at 8–11. Plaintiff also contends that Krenzen is subject to personal jurisdiction based on contracts in which he consented to jurisdiction.

The Eleventh Circuit has explained that a nonresident defendant may be subject to personal jurisdiction under Florida's long-arm statute in one of two ways:

> First, a defendant is subject to '*specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated in the statute. Second, a defendant is subject to '*general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida.'

*Waite*, 901 F.3d at 1312 (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)); *see also* Fla. Stat. § 48.193(1)(a) and (2).

If the nonresident defendant is found to be subject to specific or general jurisdiction under Section 48.193(1)(a) or (2), the Court next determines whether the exercise of personal jurisdiction comports with due process under the United States Constitution. *Id.* The benchmark of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with

other persons affiliated with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### 1.  Contractual Consent To Jurisdiction

Before considering whether Shores Global has sufficiently established general or specific personal jurisdiction, the undersigned first addresses Shores Global's argument that Krenzen consented to personal jurisdiction in his Agreements with the company.

In the Amended Complaint, Shores Global alleges that Krenzen "repeatedly, expressly, and in writing agreed that any cause of action arising out of the parties' Agreements 'is deemed to have arisen from a transaction of business in the State of Florida' and, '[t]o the fullest extent permitted by law, . . . irrevocably waive[d] any objection that [he] may have now or later in the venue of any action arising out of this Agreement in any [Florida] courts[.]'" Am. Compl. at ¶ 13 (citing Krenzen's Employment and Non-Compete agreements [ECF No. 55-1]). And in the Response to the Motion to Dismiss, Plaintiff contends that Krenzen submitted himself to jurisdiction by entering into a contract in which he expressly consented to jurisdiction, citing Section 48.193(1)(a)(9), Florida Statutes. Resp. at 6–7. Shores Global does not allege in the Amended Complaint and does not argue in the Response to the Motion that Njord's is bound by the consent to jurisdiction in Krenzen's Agreements with Shores Global.

Both of the agreements signed by Krenzen (the Employment Agreement and the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement) include the same choice of law and venue/jurisdiction provisions, which provide:

**(d) Governing Law**
This Agreement is governed, construed, and administered according to the laws of the State of Florida, as from time to time amended, and any applicable federal law. No effect is given to any choice-of-law or conflict-of-law provision or rule (whether of the State of Florida or any other

12

jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Florida.

. . .

**(e) Venue; Submission to Jurisdiction**

A cause of action arising out of this Agreement includes any cause of action seeking to enforce any provision of or based on any matter arising out of or in connection with this Agreement or the transactions contemplated by it. The parties agree that any suit, action, or proceeding—whether in contract, tort, or otherwise—arising out of this Agreement must be brought in a state or federal court or courts located in the State of Florida if one of these courts has subject-matter jurisdiction over the suit, action, or proceeding. Any cause of action arising out of this Agreement is deemed to have arisen from a transaction of business in the State of Florida.

Each party irrevocably consents to the jurisdiction of these courts (and their respective appellate courts) in any cause of action arising out of this Agreement. To the fullest extent permitted by law, each party irrevocably waives any objection that it may have now or later to the venue of any action arising out of this Agreement in any of these courts, including an inconvenient forum petition. . . .

[ECF No. 55-1 at 11, 23].

Defendants argue that Krenzen is not subject to jurisdiction based on the agreements on three grounds: (1) the agreements are void because Krenzen signed under duress; (2) the consent does not support the exercise of jurisdiction because the applicable statute does not apply to employment contracts; and (3) the statute does not apply because the agreements do not involve consideration of $250,000 or more. Mot. at 15–16.

Florida's long-arm statute, Section 48.193(1)(a), authorizes a Florida court to exercise jurisdiction over a non-resident if he or she entered into a contract that complies with Florida Statute Sections 685.101–.102, which, in turn, allow the Court to exercise jurisdiction where the contract at issue:

(1) include[s] a choice of law provision designating Florida Law as the governing law, (2) include[s] a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve[s] consideration of not less than $250,000, (4) [does] not violate the United States Constitution, and (5) either bear[s] a substantial [and] reasonable relation to Florida or [was entered into by at least one Florida resident or citizen].

*Jetbroadband WV, LLC v. MasTec N. Am., Inc.*, 13 So. 3d 159, 162 (Fla. 3d DCA 2009) (summarizing the requirements in Fla. Stat. §§ 685.101–.102). The Agreement must also (6) not fall within one of the statute's safe harbor exemptions, which include contracts "[f]or labor or employment." Fla. Stat. § 685.101(2)(b) (listing all exempt contracts).

The undersigned determines whether Shores Global has satisfied each element below, accepting the allegations in the Amended Complaint as true, to the extent they are uncontroverted by competent evidence, and viewing any conflicting evidence in Shores Global's favor. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

### a. Duress

Krenzen does not dispute that the Agreements contain a choice of law provision, under which Florida law governs related disputes between the parties, or that the Agreements contain a forum selection clause, under which Krenzen purports to submit to the jurisdiction of the State and Federal courts in Florida. Instead, Krenzen argues that these provisions are not binding because he signed the Agreements under duress.

Duress is a legally recognized defense to a contract. "The law is not so stubborn that it fails to recognize that sometimes holding a person to the terms of a contract would be unjust or unfair." *High v. Sawgrass Ford, Inc.*, No. 14-62883, 2015 WL 13595154, at *1–2 (S.D. Fla. Apr. 24, 2015) (Scola, J.). In the context of employer-employee contracts, to establish duress, "two factors must be proven: (1) that the act was effected involuntarily and was not an exercise of free choice or will, and (2) that this condition of mind was caused by some improper and coercive conduct by the other side." *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 685 (Fla. 4th DCA 2015).

In *AMS Staff Leasing*, a Florida appellate court described duress as "a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Id*. at 687 (quoting *Francavilla v. Francavilla*, 969 So. 2d 522, 524–25 (Fla. 4th DCA 2007)). In that case, the plaintiff went to work for an employer as a truck driver. Three days later, when he showed up for his first day of work, he was handed an application for employment with an employee leasing company and told to "fill out the form ... and return it within five minutes or else [he] could 'go home' and would be fired." *Id*. at 684–85. Taylor filled out the form "on the hood of a truck under a parking lot light; ... [he] signed the agreement, but he did not read it because he did not have his reading glasses with him." *Id*. The agreement contained an arbitration clause, but when Taylor later sued the leasing company, he argued that the court should not enforce the arbitration agreement because he signed the contract under duress. The Florida court concluded that there was "insufficient evidence to establish duress." *Id*. at 687. "The only evidence of a 'threat' in this case was the threat that [Taylor's] services were not needed if he did not sign the employment contract . . . [t]his is insufficient to constitute duress." *Id*. The court explained that in most contract negotiations there is an implied threat that if the terms offered are not accepted, the offer will be withdrawn. *Id*. "Such threats are an accepted part of the bargaining process." *Id*. (quoting Restatement (Second) of Contracts § 176 cmt. a (1981)); *see also Henriquez v. NCL (Bah.), Ltd.*, 440 F. App'x 714, 716 (11th Cir. 2011) (finding assertions that an employee did not have an opportunity to read the contract before signing it, and that he would not be permitted to work if he did not sign, did not amount to duress, "but rather, a tough choice").

Similarly, in *High v. Sawgrass Ford,* the plaintiff/former employee claimed duress because he was "rushed" and "felt that [he] had no other alternative" but to sign the agreement "so [he] could get to work." 2015 WL 13595154, at *1–2. The district court held that did not rise to the level of duress but, instead, was "the sort of take-it-or-leave-it, inherent threat in any contract negotiation" that if the employee did not accede to the employer's employment-agreement demands then the employer may not employ him. *Id.*

Here, Krenzen claims that he was subject to duress because he was presented with the agreements containing the jurisdiction and venue provisions after he had already moved to Miami and found a new residence and because Shores Global told him that if he did not sign the agreement, they would terminate his employment and withdraw his visa so he would no longer be able to remain in the United States. Mot. at 16. The undersigned finds that these "take-it-or-leave-it" circumstances, like those in *Sawgrass Ford* and *AMS Staff Leasing*, do not rise to the level of duress.

To the extent Krenzen claims economic duress because he expended his own funds in order to move to Miami, his allegations also fall short. Under Florida law, economic duress permits an aggrieved party to rescind an agreement that was entered into under severe financial anxiety or pressure. *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 503 (S.D. Fla. 2000). "Establishing a case of economic duress is extremely difficult." *Id.* The aggrieved party must show: (1) wrongful acts or threats, (2) financial distress caused by the wrongful acts or threats, and (3) absence of a reasonable alternative course of action. *Id.* (collecting cases). "In essence, the party seeking to rescind the contract must show 'that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or free will . . . .'" *Id.* (quoting *Finn v. Prudential–Bache Sec., Inc.,* 821 F.2d 581, 587 (11th Cir. 1987)).

16

Krenzen fails to plausibly allege that he had no reasonable alternative course of action. Krenzen had options: he could have elected to simply not execute the documents, or he could have filed suit to recover funds expended in reliance on promises by Shores Global on grounds, for example, of fraud in the inducement. *See, e.g., City of Miami v. Kory*, 394 So. 2d 494, 499 (Fla. 3d DCA 1981) ("The rule is, however, that threatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it.") (citing *Hartsville Oil Mill v. United States*, 271 U.S. 43 (1926)); *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1317–18 (S.D. Fla. 2016) (Ungaro, J.).

Under the circumstances alleged by Krenzen, he has not plausibly alleged that he signed the Agreements under duress, and, as such, they are enforceable.

### b.  The $250,000 Transactional Amount Requirement

Krenzen also argues the Agreements he signed do not satisfy the $250,000 transactional amount. Section 685.101(1) provides that, to satisfy the Florida long-arm statute, the contract at issue must be "in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000[.]" Fla. Stat. § 685.101(1). Florida courts give a "somewhat relaxed reading" to this requirement. *Steffan v. Carnival Corp.*, No. 16-25295-CIV, 2017 WL 4182203, at *6 (S.D. Fla. Aug. 1, 2017) (Altonaga, J.). "[E]ven if the parties to an agreement do not exchange at least $250,000, section 685.101 may still apply if an aggregate of more than $250,000 arises from transactions related to the contract." *Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC*, 16-cv-179, 2016 WL 5933422, at *6 (M.D. Fla. Oct. 12, 2016) (noting that Section 685.101 requires the agreement to be either "in consideration of *or relating to* any obligation arising out of a transaction involving not less than $250,000") (emphasis added).

In the Amended Complaint, Shores Global alleges, "The Agreements, both individually and in concert, relate to transactions involving in the aggregate an amount in excess of $250,000, given the amount of sales at issue and the value of the Confidential Information, among other things." Am. Compl. at ¶ 34. Krenzen contends that this allegation does not satisfy the statute on the grounds the statute requires "<u>consideration</u> of more than $250,000." Mot. at 16. Krenzen claims his employment agreement does not meet the threshold because his salary was $80,000 per year, and he only worked eight months before the agreement was terminated. *Id.* In his Declaration in support of the Motion, Krenzen states: "The … Agreement provided for an annual compensation of $80,000, plus miscellaneous perquisites totaling far less than $250,000." Krenzen Decl. at ¶ 15. He also argues that it is improper to use the value of other contracts between Defendants and third parties to get over the $250,000 threshold. *Id.* (citing *Singh v. Royal Caribbean Cruises Ltd.*, No. 20-24987, 2021 WL 6884873 (S.D. Fla. Dec. 10, 2021) (Martinez, J.)).

Shores Global responds that "Krenzen's compensation of $80,000 per year, plus bonuses and other related expenses, alone exceeds $250,000 in the aggregate." Resp. at 6. Shores Global submitted the Declaration of its CEO, Susan Sadolin, who explains:

> a.      *First*, although Krenzen's annual base salary was $80,000, his total compensation encompassed other valuable benefits, including an annual commission-based bonus, that was reasonably expected to exceed $250,000 over the course of his employment at the time the agreement was executed. Indeed, Krenzen could be expected to earn over $100,000 in commissions alone for just a single project for a single cruise line. Finally, at the time Krenzen signed his restrictive covenants, he was expected to work for Shores Global for several years and, for the relatively brief eight-month period that Krenzen worked for Shores Global's headquarters in Florida, the combined value of his salary, his commissions, his relocation expenses, his travel expenses, and his other incidental expenses was already approximately $200,000 or more.
>
> b.      *Second*, in addition to Krenzen's total compensation, which was reasonably expected to exceed $250,000, his employment agreement and non-competition agreement both related to and arose from his job-related duties

involving the sale of goods and services to cruise lines worth several millions
of dollars.

[ECF No. 66-1 ("Sadolin Decl.") at ¶¶ 7(a)–(b)].

Thus, according to Shores Global, Krenzen's compensation package reflects a value
of more than $250,000 arising from his Agreements with the company.[2] *Id.*; Resp. at 6–7.
Shores Global also argues that Krenzen's contract implicates several millions of dollars of
contracts expected to arise out of Krenzen's employment. *Id.* (citing Sadolin Decl. at ¶ 7(b)).

Although Krenzen makes one statement in his Declaration that his compensation
package totals less than $250,000, he does not present evidence to rebut Shores Global's
evidence that the aggregate compensation and transactions relating to the Agreements equal
or exceed $250,000. The undersigned credits Shores Global's contentions. *See Cable/Home
Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) ("Where the
parties' affidavit and deposition evidence conflict, the district court must construe all
reasonable inferences in favor of the plaintiff.") (citing *Morris*, 843 F.2d at 492; *Delong Equip.
Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)).

Therefore, at this stage in the proceedings, viewing the evidence in the light most
favorable to Shores Global, the undersigned finds the Agreements at issue satisfy Section
685.101(1)'s requirement that the contract at issue be "in consideration of or relating to any

---

[2] Defendants point out that Krenzen had not yet earned more than approximately $200,000
before he resigned. The undersigned nevertheless considers the amounts Shores Global
indicates Krenzen was expected to earn to determine whether the $250,000 requirement is
satisfied. *See Square Ring Inc. v. Troyanovsky*, No. 3:16-CV-641, 2018 WL 7350674, at *10
(N.D. Fla. Feb. 12, 2018) (finding $250,000 requirement satisfied even though not all events
in contract that would have surpassed the $250,000 in transactions had occurred because the
evidence reflected what the plaintiff could have made under the contract); *Upofloor*, 2016
WL 5933422, at *6 (finding the $250,000 requirement met based on the amount of
"projected" sales, even though these sales were never made).

obligation arising out of a transaction involving in the aggregate not less than $250,000." Fla. Stat. § 685.101(1).

### c.  The Exemption For Contracts For Labor And Employment

Krenzen next argues that the consent to jurisdiction is not binding because it is within a contract for employment. Mot. at 15 (citing Fla. Stat. § 685.101(2)(b)). Shores Global responds that Defendants incorrectly focus on only the Employment Agreement, whereas Krenzen also executed a Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (hereinafter, the "Non-Competition Agreement") which also contains the consent to jurisdiction. Shores Global contends that the consent included in the Non-Competition Agreement is fully enforceable despite the separate Employment Agreement. Resp. at 7–8 (citing *Medytox Diagnostics, Inc. v. Samuels*, No. 14-CIV-20719, 2014 WL 12606310 (S.D. Fla. July 18, 2014) (Altonaga, J.)). Defendants reply that the Non-Competition Agreement is an employment agreement because it states that it was entered into "[i]n connection with Employee's employment with [the] Company…" Reply at 5; *see also* [ECF No. 55-1 at 19].

Section 685.101 expressly provides that it does not apply to contracts "(b) [f]or labor or employment; [or] (c) [r]elating to any transaction for personal, family, or household purposes[.]" Fla. Stat. § 685.101(2). The statute does not offer a definition for these terms. Notably, the statute does not include the qualifier "relating to" in the labor or employment exemption – as it does with respect to the personal, family, or household purposes exemption.

"A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 577–78 (2006) (citing

*Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'")). Although the Florida Legislature expressly indicated that contracts "relating to" transactions for "personal, family, or household purposes" are excluded from Section 685.101, with regard to contracts for labor and employment, the Legislature did not include such broadening language. Therefore, applying this basic tenet of statutory construction, it is presumed that the Legislature intended for the labor and employment exemption to be interpreted narrowly. *See Square Ring*, 2018 WL 7350674, at *14; *Elandia Int'l, Inc. v. Koy*, 690 F. Supp. 2d 1317, 1335 (S.D. Fla. 2010) (Moreno, J.) (noting the expansive effect of the "or relating to any obligation" language as to a different provision of Fla. Stat. § 685.101).

In the instant case, Krenzen entered into two separate Agreements with Shores Global: an Employment Agreement and the Non-Competition Agreement. Although the Non-Competition Agreement may relate to the Employment Agreement, it is not a contract "**for** labor or employment", and, therefore, does not fall within the exclusion for such contracts in Section 685.101(2).

### d.  Due Process Implications Of Personal Jurisdiction By Consent

The Due Process Clause of the Fourteenth Amendment "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (internal quotation marks and citation omitted). However, where the parties have agreed to a valid forum selection clause, the "enforcement [of that clause] does not offend due process." *Rudzewicz*, 471 U.S. at 472 n.14. This is particularly true

where the contract at issue contains a choice of law provision designating that the law of the forum governs. *See id.* at 481–82. This is because, by agreeing that contractual disputes will be heard in a particular forum and that the forum's substantive law governs, the nonresident has deliberately affiliated with the forum state and can reasonably anticipate that a suit concerning the dispute will be tried in that forum. *See id.* at 472 n.14, 481–82 (explaining that enforcing a forum selection clause does not offend due process and that a choice of law provision "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 881 (11th Cir. 2018) (explaining that the South Africa forum selection provision and choice of law clause within insurance policies "indicat[e] that [the defendant] did deliberately affiliate with [South Africa] and did not reasonably anticipate being haled into court in the United States based on a dispute arising from the policies").

In this case, the Agreements contain a forum selection clause stating that the parties submit to the jurisdiction of the state and federal courts in Florida and a choice of law provision stating that Florida law applies to any disputes arising out of the Agreements. *See* [ECF No. 55-1 at 11, 23]. These provisions "indicat[e] that [Krenzen] . . . deliberately affiliate[d] with the forum" and reasonably anticipated that a suit concerning the Agreements would be litigated in this State. *See Aviation One*, 722 F. App'x at 881; *Rudzewicz*, 471 U.S. at 472 n.14, 481–82. Due process is satisfied as a result, notwithstanding that Krenzen may have limited contacts with the forum apart from the Agreements' Florida-based forum selection clause and choice of law provision. *See Rudzewicz*, 471 U.S. at 472 n.14 (explaining that the enforcement of a forum selection clause will not offend due process); *see also AutoNation, Inc. v. Hall*, No. 19-60291-CIV, 2019 WL

3712008, at *7 (S.D. Fla. May 29, 2019) (Altonaga, J.) ("[B]ecause the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done." (citing *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989)); *see also Northrop & Johnson Holding Co., v. Leahy*, No. 16-cv-63008, 2017 WL 4237869, at *4 (S.D. Fla. Sept. 25, 2017) (Bloom, J.) ("[W]hen a defendant has consented to suit in a forum, no due process analysis is required.").

Accordingly, Krenzen is bound by the forum selection and consent to jurisdiction provisions in the Non-Competition Agreement with Shores Global and subject to personal jurisdiction in this Court. The Agreement is not, however, a basis for the exercise of jurisdiction over Njord's.[3]

## 2.  General Jurisdiction Under Florida's Long-Arm Statute

Shores Global alleges Defendants are subject to jurisdiction under Florida's long-arm statute, citing Sections 48.193(1) and (2), although the Amended Complaint includes no

---

[3] Shores Global does allege that Njord's is subject to personal jurisdiction under Florida's long-arm statute based on Krenzen's conduct (discussed below) on grounds Njord's ratified Krenzen's acts. However, Shores Global does not assert that argument in connection with the consent provisions in Krenzen's Agreements. Shores Global offers no valid legal basis for binding Njord's to the consent provisions in Krenzen's Agreements. The Eleventh Circuit and several Florida District Courts have held non-signatories to contracts bound by forum selection and consent provisions under limited circumstances. In *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285 (11th Cir. 1998), the Eleventh Circuit held that non-signing plaintiffs were bound by the choice of law clauses in a contract where "the interests of the spouses in this dispute are completely derivative of those of the Name plaintiffs—and thus 'directly related to, if not predicated upon' the interests of the Name plaintiffs[.]" Although the interests of Njord's in the instant dispute may be derivative of those of Krenzen, unlike the circumstances in *Lipcon*, it is not Krenzen or Njord's, the defendants, who seek to enforce the consent provisions. Instead, here, Shores Global, the plaintiff, would be asking the Court to bind a non-signing defendant to a forum selection clause in order to exercise personal jurisdiction over that defendant. Given the minimum contacts Njord's has with this forum, binding Njord's under such circumstances is not supported by the *Lipcon* decision and would offend due process. *See Slaihem v. Sea Tow Bah. Ltd.*, 148 F. Supp. 2d 1343, 1347–48 (S.D. Fla. 2001) (Moreno, J.).

basis for the assertion of general jurisdiction. Defendants contend the Amended Complaint lacks allegations to support general jurisdiction and cite Krenzen's Declaration in support of their claim that Defendants lack sufficient contacts with Florida. Mot. at 12. Shores Global does not directly respond to Defendants' contention that general jurisdiction has not been sufficiently alleged. The undersigned agrees that Shores Global has not sufficiently alleged general jurisdiction.

Under Florida's long-arm statute, a court has general jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Such activity can be "wholly interstate, intrastate, or otherwise." *Id.* Florida courts have defined the term "substantial and not isolated activity" as used in Section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Generally, the contacts required to establish general jurisdiction are quite rigorous and "must be especially pervasive and substantial" to satisfy Section 48.193(2). *In re Farmland Indus., Inc.*, No. 3:05–CV–587, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007).

Therefore, the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citations omitted). Additionally, "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 132 (citations omitted).

24

In the Amended Complaint, Shores Global does not allege that either Krenzen or Njord's "engaged in substantial and not isolated activity within this state." On the other hand, in his Declaration, Krenzen states that Njord's is a Danish company with its principal place of business in Denmark and that neither of the Defendants has operated, conducted, engaged in, or carried on any business or business venture within the State of Florida. *See* Krenzen Decl. at ¶¶ 24–25, 28–32. Shores Global did not provide affidavits, testimony, or documents to rebut these statements. *See Moale v. Tonno Ltd.*, No. 19-25114, 2020 WL 13389755, at *2 (S.D. Fla. Nov. 30, 2020) (Cooke, J.) (citing *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)). Thus, the undersigned finds the Amended Complaint fails to allege sufficient facts to demonstrate Defendants' contacts with Florida are so pervasive and substantial as to render them essentially at home in Florida, and thus, amenable to suit in this action, and Shores Global failed to rebut Defendants' evidence to the contrary. *See Bowers*, 2015 WL 2415332, at *3.

Accordingly, Shores Global has not demonstrated that this Court may exercise personal jurisdiction over Defendants under the general jurisdiction provision of Florida's long-arm statute, Section 48.193(2).

### 3. Specific Jurisdiction Under Florida's Long-Arm Statute

The undersigned next considers whether Shores Global has established that Defendants are subject to specific jurisdiction.

Section 48.193(1)(a) of Florida's long-arm statute permits personal jurisdiction over a nonresident defendant for any cause of action arising from any one of nine enumerated acts. Fla. Stat. § 48.193(1)(a); *see also Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 548 (11th Cir. 2019). Shores Global alleges Defendants are subject to specific jurisdiction because they: (1) carried on a business venture in Florida; (2) committed a tortious act in Florida; (3)

caused injury to persons or property in Florida; and (4) breached a contract by failing to perform certain acts required to be performed in Florida. Am. Compl. at ¶12(a)–(d) (citing Fla. Stat. §§ 48.193(1)(a)(1)–(2)).

### a.  Carrying On A Business Venture In Florida

"In order to establish that a defendant is 'carrying on [a] business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech.*, 218 F.3d at 1249). Relevant factors to consider include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue obtained from those clients. *Id.* (citations omitted). "For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Valencia v. Horizon Att'ys & Couns. at Law PLC*, No. 17-cv-61205, 2017 WL 7792619, at *3 (S.D. Fla. Dec. 8, 2017) (Dimitrouleas, J.) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

The Amended Complaint does not provide any factual allegations showing that Defendants had a general course of business activity in Florida for pecuniary benefit. Thus, Shores Global did not satisfy its initial burden. On the other hand, the Krenzen Declaration, submitted in support of the Motion, indicates that Defendants do not conduct business in Florida, have no office in Florida, and have no clients in Florida. *See* Krenzen Decl. at ¶¶ 24–25, 28–32. Plaintiff appears to abandon the claim that personal jurisdiction is available based on the carrying on of a business in Florida in their Response and have, therefore,

failed to rebut the Krenzen Declaration demonstrating that Defendants did not carry on a business venture in Florida.

Accordingly, Shores Global has not established that specific jurisdiction is appropriate as to either Defendant pursuant to Section 48.193(1)(a)(1).

### b.  Breach Of Contract In Florida

Shores Global alleges in the Amended Complaint that Defendants are subject to specific personal jurisdiction pursuant to Section 48.193(1)(a)(7) based on breaches of the Non-Competition Agreement in Florida. Am. Compl. at ¶ 12(d).

Defendants contend the allegations in the Amended Complaint regarding this basis for personal jurisdiction are conclusory and insufficient to satisfy Shores Global's initial burden and that there are no allegations that Defendant Njord's entered into any contracts with Shores Global. Mot. at 14–15. Defendants also argue that there are no allegations or facts indicating that Defendants failed to perform any acts required to be performed in Florida. *Id.*

Shores Global responds that Krenzen breached the Non-Competition Agreement by failing to return allegedly misappropriated confidential information and that the acts of Krenzen are imputed to Njord's such that both are subject to specific personal jurisdiction pursuant to Section 48.193(1)(a)(7). Shores Global cites the Declaration of its principal, Susan Sadolin, in which Ms. Sadolin states Krenzen misappropriated confidential information in Florida and is using it to target Shores Global customers and suppliers in Florida, causing harm in Florida. Resp. at 10 (citing ECF No. 66-1). Defendants reply by pointing out that the Non-Competition Agreement did not require Krenzen to return the confidential information in Florida and that there is no evidence that Shores Global requested or required Krenzen to return such information in Florida. Reply at 5–6.

"[I]ndividuals submit themselves to the jurisdiction of Florida for any cause of action arising from a breach of contract for failure to 'perform acts required by the contract to be performed in this state.'" *Olson v. Robbie*, 141 So. 3d 636, 639 (Fla. 4th DCA 2014) (quoting Fla. Stat. § 48.193(1)(a)(7)). However, for the exercise of jurisdiction over a nonresident or foreign corporation to be appropriate under subsection (1)(a)(7), "there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999) (emphasis added). As with the other provisions of Florida's long-arm statute, "[t]his provision must be strictly construed in order to guarantee compliance with due process requirements." *Olson*, 141 So. 3d at 640 (citation omitted).

As indicated above, Shores Global's basis for asserting jurisdiction pursuant to Section 48.193(1)(a)(7) is Krenzen's alleged misappropriation of Plaintiff's confidential information and the failure to return it in Florida, as well as the use of such information to target contacts in Florida. As Defendants point out, the Non-Competition Agreement is silent as to where an employee must return Confidential Information. *See* [ECF No. 55-1 at 19]. And the Sadolin Declaration does not indicate that Krenzen had been told to return the confidential information to any specific place.

As set forth above, a plaintiff suing a nonresident defendant bears both the initial burden of alleging a *prima facie* case of personal jurisdiction and, if that jurisdiction is challenged, the ultimate burden of establishing that its exercise is proper. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). If the defendant raises more than mere "conclusory assertions" that personal jurisdiction is lacking, the plaintiff must then "produce evidence supporting jurisdiction." *Mosseri*, 736 F.3d at 1350; *see also Posner*, 178

F.3d at 1215. And, as explained above, with regard to personal jurisdiction under subsection (1)(a)(7), "there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner*, 178 F.3d at 1218. As with the other provisions of the Florida long-arm statute, "[t]his provision must be strictly construed in order to guarantee compliance with due process requirements." *Olson*, 141 So. 3d at 640 (citation omitted).

Shores Global's allegations in the Amended Complaint do not satisfy the initial burden of alleging jurisdiction under Section 48.193(1)(a)(7), as the Amended Complaint does not allege that Krenzen had a duty to perform an act in Florida. Defendants have raised more than mere conclusory assertions that personal jurisdiction is lacking by pointing out the absence of any requirement in the Agreement that Krenzen return confidential information in Florida (and the absence of evidence that he was otherwise directed to return the confidential information in Florida). Shores Global did not respond with any evidence to rebut Defendants' evidence or to support jurisdiction under this Section of Florida's long-arm statute. In the absence of such allegations or evidence, Shores Global has failed to carry its "ultimate burden" of establishing that Krenzen breached an obligation to perform under the Non-Competition Agreement in Florida. *Oldfield*, 558 F.3d at 1217; *Cf. AutoNation*, 2019 WL 3712008, at *5 (finding personal jurisdiction where contract specifically required performance in Florida).

Accordingly, Shores Global has not demonstrated that Krenzen is subject to personal jurisdiction under Section 48.193(1)(a)(7) of Florida's long-arm statute. As such, the Court need not address whether Krenzen's actions may be imputed to Njord's for purposes of this provision.

### c.  Committing A Tortious Act In Florida

The undersigned next considers whether the Court may exercise specific jurisdiction over Defendants based on their having committed a tortious act in this State. Fla. Stat. § 48.193(1)(a)(2).

In the Amended Complaint, Shores Global alleges Defendants are subject to specific jurisdiction under section 48.193(1)(a)(2) because they committed tortious acts which purportedly caused harm to Shores Global in Florida. Am. Compl. at ¶¶ 12(b)–(c). Defendants argue Shores Global has not adequately alleged that a substantial aspect of the alleged torts occurred in Florida and that the solicitation of employees cannot serve as a basis for jurisdiction because the claim lacks merit. Mot. 13–14 (citing Declarations of Sorensen, Larsen, and Hansen [ECF Nos. 59-3 through 59-5]). Defendants also point out that Njord's was not formed until after Krenzen left Florida, so Njord's cannot be subject to jurisdiction on this basis. *Id.* Shores Global responds that Defendants' alleged tortious acts, including misappropriation of trade secrets and confidential information and the solicitation of Shores Global's employees, occurred, in substantial part, in Florida and ultimately caused harm to Shores Global in Florida. Resp. at 9–11. Shores Global also argues that Krenzen's acts can be imputed to Njord's. *Id.* at 8–9. To this, Defendants reply that Shores Global has failed to demonstrate that a substantial aspect of the torts occurred in Florida and failed to respond to the declarations submitted by Defendants regarding the lack of merit to the soliciting employees claim. Reply at 6.

"[T]o commit a tortious act in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). However, personal jurisdiction cannot be established under this prong unless a plaintiff shows the defendant's activities in Florida were "essential to the success of the tort." *Valencia*, 2017 WL 7792619,

at *4 (quoting *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988)). Moreover, "[t]elephonic, electronic, or written communications into Florida provide a basis for jurisdiction if the tort arises from the communications and depend[s] upon proof of either the existence or the content of any of the communications." *Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854–55 (11th Cir. 2009) (quoting *Horizon*, 421 F.3d at 1168) (internal quotations omitted). "The Eleventh Circuit construes this subsection broadly." *Office Depot, Inc. v. Pelletier*, No. 16-81170-CIV, 2016 WL 10932510, at *3 (S.D. Fla. Sept. 8, 2016) (Dimitrouleas, J.) (citing *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1379 (S.D. Fla. 2012)).

Shores Global alleges that Krenzen misappropriated trade secrets and secretly began working for a competitor while in Florida and that such conduct harmed Shores Global at its headquarters in Florida. Shores Global also points out other alleged conduct by Defendants, including the "poaching" of Shores Global employees and interference with Shores Global client and supplier relationships, all, according to Shores Global, occurring in or impacting Shores Global in Florida. Resp. at 9–10.

Shores Global relies on the decision in *AutoNation v. Hall* in support of its arguments that "Courts have routinely found similar allegations . . . sufficient to establish specific jurisdiction under Florida's long-arm statute." Resp. at 9 (citing *AutoNation*, 2019 WL 3712008, at *6). The undersigned agrees the *AutoNation* decision, and the cases cited therein, is particularly instructive here. In that case, the plaintiff, AutoNation, alleged that its former employee "committed the tort of misappropriation by acquiring AutoNation's trade secrets," and his "actual misappropriation of these trade secrets and decision to begin working for a direct competitor and the threatened use of these trade secrets in his

31

employment with AutoNation's competitor directly harm[ed] AutoNation, headquartered in Florida." *AutoNation*, 2019 WL 3712008, at *6.

The *AutoNation* Court, Judge Altonaga, found that the alleged conduct was sufficient to establish specific jurisdiction under Florida's long-arm statute, citing several cases in support. *Id.* (citing *Pelletier*, 2016 WL 10932510, at *3 (finding specific jurisdiction where employer based and headquartered in Florida alleged former employee's tortious acts—unfair competition, misappropriation of proprietary and confidential information, *etc.*—were committed outside of Florida but caused injury to employer in Florida); *TSM Tech. Mgmt., Inc. v. Benowitz*, No. 6:14–cv–1061, 2015 WL 1311016, at *4 (M.D. Fla. Mar. 24, 2015) (same); *H.E.R.O., Inc. v. Self*, No. 12–60038–CIV, 2012 WL 1802431, at *5 (S.D. Fla. May 17, 2012) (Scola, J.) (noting the tortious conduct could have been committed anywhere plaintiffs' business associates were found, but "the real effects" would be felt where the plaintiffs "reside and conduct business—which, in this case, is Florida")).

Likewise, taking the allegations of the Amended Complaint in this case as true, Shores Global has alleged that Krenzen's conduct was intentionally directed at Shores Global, a Florida-based company, "and the harm his actions caused was felt primarily—if not exclusively—in Florida." Resp. at 9 (quoting *VAS Aero*, 868 F. Supp. 2d at 1379–80). While Defendants may have challenges to the merits of the claims, for purposes of the motion to dismiss and the challenge to personal jurisdiction, the Court accepts the allegations as true and views them in the light most favorable to Shores Global.[4] "[T]he appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the

---

[4] Although Defendants claim they submitted unrebutted declarations on this issue, a review of the declarations reflects they are relevant to the merits of the solicitation of employees claim rather than the jurisdictional allegations, and, therefore, the allegations in the Amended Complaint may be viewed in the light most favorable to Shores Global at this stage.

alleged tort actually occurred." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (Altonaga, J.) (citations omitted).

Accordingly, Shores Global's factual allegations are sufficient to support specific jurisdiction over Defendant Krenzen under Section 48.193(1)(a)(2).

### d. Jurisdiction Over Njord's

Above, the undersigned determined that Shores Global has demonstrated two bases for the assertion of jurisdiction over Defendant Krenzen: (1) Krenzen's consent to jurisdiction in the Non-Competition Agreement; and (2) Krenzen's alleged commission of tortious acts in Florida. Shores Global has not articulated a basis for jurisdiction over Defendant Njord's based on Krenzen's contractual consent. Therefore, the only possible basis for personal jurisdiction over Njord's, based on Shores Global's allegations and arguments, would be if Krenzen acted as Njord's agent or Njord's ratified Krenzen's alleged tortious conduct in Florida. *See* Am. Compl. at ¶¶ 54–55.

Florida's long-arm statute provides a defendant's contacts may be based not only on the defendant's personal activities, but also on the actions of the defendant's agents. *See* Fla. Stat. § 48.193(1)(a) (stating a person submits him or herself to personal jurisdiction under the statute when he or she "personally or through an agent does any of the acts enumerated in this subsection"); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1312 (S.D. Fla. 2017) (Altonaga, J.) ("Agency-based personal jurisdiction is expressly contemplated by the long-arm statute." (citing *Hard Candy*, 106 F. Supp. 3d at 1239)).

Shores Global asserts Njord's has acts imputed to it under the tortious activity provision by virtue of its agent, Krenzen's, actions in Florida. Am. Compl. at ¶¶ 54–55. Jurisdiction can apply to parent-subsidiary relationships as well as relationships between members of a limited liability company and the company itself. *See id.* "[G]eneral agency

33

principles apply when determining personal jurisdiction." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16–81180–CIV, 2017 WL 1832436, at *6 (S.D. Fla. May 8, 2017) (Marra, J.) (alteration added) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (per curiam)). "In simple terms, agency may be defined as the relation which results where one person [or entity], called the principal, authorizes another, called the agent, to act for [it] with more or less discretionary power, in business dealings with third persons." *Econ. Rsch. Analysts, Inc. v. Brennan*, 232 So. 2d 219, 221 (Fla. 4th DCA 1970) (alterations added; citation omitted).

Defendants contend that Njord's could not have engaged in the alleged tortious conduct, nor could Krenzen have acted on Njord's' behalf when he engaged in the alleged tortious conduct, because Njord's did not exist at the time of the alleged tortious conduct. Mot. 12–13. Shores Global responds, as alleged in the Amended Complaint, that Njord's is liable and, as such, subject to personal jurisdiction, on the grounds it ratified Krenzen's conduct. Resp. at 8–9. Defendants do not respond to Shores Global's ratification allegation, and Defendants' affidavits do not deny that Krenzen was Njord's' agent or that Njord's ratified Krenzen's conduct.

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). A party "may ratify an act by failing to object to it or to repudiate it," *id.* at § 4.01 cmt. f., or by "receiving or retaining [the] benefits it generates." *Id.* at § 4.01 cmt. g. "Ratification does not occur unless . . . the act is ratifiable as stated in § 4.03." *Id.* § 4.01(3)(a). An act is ratifiable "if the actor acted *or purported to act* as an agent on the person's behalf." *Id.* § 4.03 (emphasis added). Therefore, "[w]hen an actor is not an agent

*and does not purport to be one*," the doctrine of ratification does not apply. *Id.* § 4.03 cmt. b (emphasis added).

Here, as indicated above, Shores Global alleged that Krenzen acted as Njord's' agent when engaging in the allegedly tortious conduct and that Njord's ratified Krenzen's tortious conduct. The undersigned finds that these allegations are sufficient to satisfy Section 48.193(1)(a) of Florida's long-arm statute for the exercise of specific personal jurisdiction over Defendant Njord's and that Defendants failed to rebut the allegations of agency or ratification.

### 4. Due Process

Generally, a district court must engage in a two-part inquiry to determine if it may exercise personal jurisdiction over a nonresident defendant—first by analyzing the requirements of Florida's long-arm statute, and second by examining whether the exercise of jurisdiction satisfies due process. *See Louis Vuitton*, 736 F.3d at 1350; *see also Northrop & Johnson*, 2017 WL 4237869, at *4.

However, when, as here, a nonresident defendant contractually agreed to personal jurisdiction in Florida, "the usual due process analysis need not be done." *Thayer*, 877 F.2d at 921; *see also AutoNation*, 2019 WL 3712008, at *6; *Northrop & Johnson*, 2017 WL 4237869, at *4 ("[W]hen a defendant has consented to suit in a forum, no due process analysis is required." (citations omitted)). As set forth above, Defendant Krenzen consented to personal jurisdiction in Florida. In *Thayer*, the Eleventh Circuit explained that "parties to a contract may agree in advance to submit to the jurisdiction of a given court," and therefore, the "enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust." 877 F.2d at 921 (citing

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982), and

*Rudzewicz*, 471 U.S. at 473 n.14 (other citations omitted)).

Because Defendant Krenzen contractually agreed to personal jurisdiction in Florida,

"his constitutional due process rights have been satisfied and the usual due process analysis

need not be done to determine whether sufficient minimum contacts exist[ ] for the exercise

of specific jurisdiction." *Pelletier*, 2016 WL 10932510, at *4 n.1 (citing *Rudzewicz*, 471 U.S. at

462 n.14) (alteration added); *see also Thayer*, 877 F.2d at 921 n.20 (noting the court "need

not address the [due process] issue in light of the valid clause conferring personal

jurisdiction" (alteration added)).

Nevertheless, the undersigned considers whether the exercise of personal jurisdiction

over Defendants comports with due process. The Eleventh Circuit has set forth a three-part

test to determine whether an exercise of specific personal jurisdiction comports with due

process. *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the
> defendant's contacts with the forum; (2) whether the nonresident defendant
> "purposefully availed" himself of the privilege of conducting activities within
> the forum state, thus invoking the benefit of the forum state's laws; and (3)
> whether the exercise of personal jurisdiction comports with "traditional
> notions of fair play and substantial justice."

*Id.* (citations omitted). The first inquiry focuses on whether there is a "direct causal

relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (citation

omitted). The second inquiry assesses whether the defendant's contacts with the state "(1)

are related to the plaintiff's cause of action; (2) involve some act by which the defendant

purposefully availed himself of the privileges of doing business within the forum; and (3) are

such that the defendant should reasonably anticipate being haled into court in the forum."

*Id.* at 1357. The second inquiry may also be satisfied by an alternative "effects test." *Id.* at

1356. The third inquiry considers "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

### a. <u>Due Process As To Defendant Krenzen</u>

The first inquiry is clearly satisfied as to Defendant Krenzen. As discussed, *supra*, Shores Global's claims directly arise from Krenzen's employment with Shores Global in Florida, including Krenzen's alleged misappropriation of confidential information and trade secrets and alleged solicitation of employees and customers while working in South Florida. Thus, there is a direct causal relationship between Krenzen, the forum, and the litigation.

The second inquiry is also easily satisfied as to Krenzen, who accepted employment in Florida, for which he was paid a significant salary and benefits, and, accepting Shores Global's allegations as true, engaged in conduct for which he could reasonably anticipate being haled into court.

Finally, the exercise of personal jurisdiction over Defendant Krenzen comports with traditional notions of fair play and substantial justice. Although Krenzen submitted a declaration stating that he would be burdened if required to travel to Florida to defend this action, "modern methods of transportation and communication reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23 (1957)). Indeed, the nature of Krenzen's business is international, so he is engaged in business and communications globally and much of the business of the cruise industry is in the State of Florida. Moreover, Florida has an interest in adjudicating a dispute regarding torts harming one of its own residents. *See*

*Licciardello*, 544 F.3d at 1288. Shores Global's interest in obtaining convenient and effective relief also favors an exercise of jurisdiction.

Thus, the undersigned finds that even if he was not already subject to the consent to jurisdiction, the exercise of personal jurisdiction over Defendant Krenzen comports with the Due Process Clause of the Fourteenth Amendment.

### b.  Due Process As To Defendant Njord's

Unlike Defendant Krenzen, Defendant Njord's did not engage in any conduct in the forum state. The undersigned carefully considers the parties' allegations to determine whether there is any basis to find Njord's has sufficient minimum contacts with Florida.

In the Amended Complaint, Shores Global alleges a series of acts engaged in by Krenzen that either occurred in or were directed to Florida. Then, Shores Global broadly alleges that Njord's ratified all of Krenzen's allegedly improper activities, although it does not indicate any specifics regarding that act of ratification. Am. Compl. at ¶¶ 54–55. Shores Global also includes Njord's in some of the allegations concerning conduct directed at the forum by referring to "Defendants" in the plural, *i.e.*, "Defendants utilized Plaintiff's Confidential Information…"; "Defendants continue to unfairly compete against Plaintiff…"; "Defendants continue to target their advertising and sponsorships in Miami, Florida…" Am. Compl. at ¶ 58(e)–(g). In his Declaration, in support of the Motion to Dismiss, Krenzen attests that Njord's has no contacts (no office, no employee, no conduct, no agent, no affiliate, no business) with Florida and that any acts Krenzen did in connection with Njord's all occurred after he returned to Denmark. *See* Krenzen Decl. at ¶¶ 27–32, 41. In the Sadolin Declaration, submitted by Shores Global in response to Krenzen's Declaration, Ms. Sadolin identifies numerous acts allegedly undertaken by Krenzen, but, although she indicates that many of those acts were done "for the benefit of Njord's Ark"

she does not indicate that Njord's actually engaged in any conduct in Florida. *See* Sadolin Decl. at ¶ 4(b).

In short, Shores Global has not identified any contacts that Njord's has with the forum state, and the indirect contact through Krenzen's acts is too attenuated to satisfy the Due Process Clause of the Fourteenth Amendment. *See Walden*, 571 U.S. at 286. ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (citing *Rudzewicz*, 471 U.S. at 475).

Moreover, even if any of Krenzen's conduct directed at Florida was sufficient to tag Njord's with liability, it cannot be said that Njord's, which has no office, affiliate, employee, agent, bank account, or any other tie to Florida, has "purposefully availed itself of the privilege of conducting business within the State." *See Future Tech.*, 218 F.3d at 1251 (affirming dismissal where defendant had a contract with a Florida party but otherwise insufficient contacts) (citing *Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So. 2d 529, 530 (Fla. 3d DCA 1993) (repeated orders from a New York company to Florida did not constitute minimum contacts when the purchaser of goods had no office, did no business in, and had no other presence in Florida)). Finally, although the third due process inquiry— addressing the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute—favors Shores Global, it is not sufficient to obtain jurisdiction over Njord's consistent with due process.

On consideration of the circumstances presented here, the undersigned finds that the exercise of personal jurisdiction over Njord's would offend traditional notions of fair play

and substantial justice contrary to the Due Process Clause of the Fourteenth Amendment. Therefore, Defendant Njord's should be dismissed from this action based on a lack of personal jurisdiction.

### C.  Forum Non Conveniens

Having determined that this Court may exercise jurisdiction over Defendant Krenzen, the undersigned next considers Defendants' argument that dismissal is warranted on *forum non conveniens* grounds. The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. *See generally Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

Dismissal on *forum non conveniens* grounds is proper where (1) an adequate, alternative forum is available, (2) the public and private convenience factors weigh in favor of dismissal, and (3) the plaintiff can reinstate its suit in the alternative forum without undue inconvenience or prejudice. *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). However, where, as here, the parties agreed to a forum selection clause:

> [The parties have] waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013); *see also GDG Acquisitions*, 749 F.3d at 1028 (noting "an enforceable forum-selection clause carries near-determinative weight in this analysis"). The moving party bears the burden of proof on a motion based on *forum non conveniens* grounds. *See GDG Acquisitions*, 749 F.3d at 1310–11. This is an especially "heavy burden" where, as here, the plaintiff has chosen its home forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007);

*see also Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) ("This Circuit has long mandated that district courts require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.") (internal quotation marks and citation omitted).

Defendants fail to meet their burden on each of these elements. While Defendants argue that Denmark is an adequate forum, Defendants do not argue or cite to any evidence indicating that Denmark would be *available* to hear this dispute. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) ("Availability and adequacy warrant separate consideration. An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." (citations omitted)). Nor do Defendants cite any evidence indicating that Shores Global would be able to reinstate its suit in Denmark without undue delay or prejudice. *Cf. Aviation One*, 722 F. App'x at 886 (finding that Aviation One could reinstate its suit without undue inconvenience or prejudice because defendant "stipulates that it will consent to service of process in England and toll any applicable statute of limitation in England as a condition of the dismissal"); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330-31 (11th Cir. 2011) (affirming a district court's finding that defendants established Element Nos. 1 & 3 where defendants "stipulated that they w[ould] consent to service of process in Brazil; toll any applicable Brazilian statutes of limitation; make relevant witnesses and documents available to a Brazilian civil court; and respect the final judgment of a Brazilian court").

The convenience factors also weigh against dismissal. Because the Non-Competition Agreement contains a forum selection clause, the private-interest factors are presumed to weigh entirely in favor of allowing this case to proceed in this District. *See Atl. Marine*, 571

41

U.S. at 64. Accordingly, to support a dismissal on *forum non conveniens* grounds, Defendants must rely only on the public interest factors. *See id.* These include: "(1) the forum's interest in entertaining the suit; (2) court congestion and jury duty generated by the lawsuit; (3) the desirability of having localized controversies decided at home; and (4) the difficulty in determining applicable law and applying foreign law." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1061 (11th Cir. 2009). "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

This is not the "unusual case" in which the forum selection clause should not control. *See, e.g., Savin v. CSX Corp.*, 657 F. Supp. 1210 (S.D.N.Y. 1987) (transferring the case to the Western District of Pennsylvania, despite a New York forum selection clause, where there were six related cases in the Western District of Pennsylvania that were being tried by a judge there for the past ten years). To the contrary, the public interest factors weigh in favor of allowing this case to proceed in this District. While Defendants allegedly engaged in most of the alleged conduct after Krenzen returned to Denmark, an indication that the action may be more local there, Florida law governs under the Agreements, meaning that Florida has a stronger interest in the case and that a Florida court would be better equipped to efficiently address the issues of law at hand. *See Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) ("There is an appropriateness too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of law, and in law foreign to itself.") (citation omitted)); *Aviation One*, 722 F. App'x at 885 (citing an English choice of law provision to indicate England is the better forum because "English courts would obviously be more familiar" with English law); *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-

cv-2177, 2017 WL 106835, at *10–11 (N.D. Tex. Jan. 11, 2017) (citing a California choice-of-law clause as weighing in favor of transferring the case to California for similar reasons).

The undersigned acknowledges that the presence of Njord's in the case does affect the analysis of Defendants' *forum non conveniens* challenge. Initially, because this Court lacks personal jurisdiction over Defendant Njord's, the Court need not address the *forum non conveniens* issue insofar as Njord's is concerned. Nonetheless, the undersigned points out that in light of Defendants' failure to carry their burden of demonstrating dismissal on *forum non conveniens* is warranted in this case, if Njord's was properly before the Court, the *forum non conveniens* motion would be denied as to it as well. The burden, which is a high one, is on Defendants, and they have not satisfied their burden of overcoming the deference to Shores Global's chosen forum, even as to Njord's. *See Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1314 (S.D. Fla. 2013) (Moreno, J.) ("When the plaintiffs are 'citizens, residents, or corporations of this country,' the Eleventh Circuit mandates that a district court 'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" (citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101–02 (11th Cir. 2004)).

Likewise, the undersigned has considered the fact that by dismissing Njord's and permitting the case to proceed against Krenzen, the parties are faced with the possibility of litigating these issues in two different countries. The inability to proceed against both defendants in the same forum does weigh in favor of dismissal. *See Wagner*, 984 F. Supp. 2d at 1316 (citing *Ward v. Kerzner Int'l Hotels Ltd.*, No. 03-23087-CIV, 2005 WL 2456191, at *3 n.4 (S.D. Fla. Mar. 30, 2005) (Jordan, J.)); *Karlitz v. Regent Int'l Hotels, Ltd.*, No. 95 Civ.

10136, 1997 WL 88291 (S.D.N.Y. Feb. 28, 1997) (claim against hotel operator who could not implead manufacturer of ramp where guest fell weighed in favor of dismissal)). Nonetheless, given the deference the Court must give to Shores Global's choice of forum, this factor cannot determine dismissal of this case. *Wagner*, 984 F. Supp. 2d at 1316; *Ward*, 2005 WL 2456191, at *3 n.4 ("Even assuming that there are third parties that need to be joined[,] . . . the defendants have not established that it would be unduly burdensome to pursue a separate indemnification action against any such third parties in the Bahamas.").

With all the foregoing in mind, because Defendants have not satisfied their heavy burden of demonstrating that the convenience of the parties and the interests of justice weigh in favor of trying this case in the alternative forum, Defendants' Motion to Dismiss on *forum non conveniens* grounds should be denied.

### D.  Failure To State A Claim

The undersigned now turns to Defendants' challenges to the adequacy of the allegations in the Amended Complaint. Defendants challenge all four counts of the Amended Complaint. Unlike the personal jurisdiction and *forum non conveniens* analyses, for purposes of determining Defendants' Rule 12(b)(6) claims, the Court does not consider documents beyond those attached to the Amended Complaint. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." (citation omitted)).

### 1.  Count I – Breach of Contract

Count I of the Amended Complaint alleges Defendants breached the terms of the Agreements between Krenzen and Shores Global. Specifically, Count I alleges that Krenzen breached the Non-Competition, Non-Disclosure, and Non-Solicitation covenants of the

parties' Agreements. Defendants argue that Shores Global's allegations regarding non-disclosure are conclusory as they do not allege that Krenzen actually used any confidential information and that the allegations regarding non-solicitation fail because Shores Global does not identify any employees or customers solicited by Krenzen. Mot. at 22–23. The Motion does not challenge the adequacy of allegations regarding breach of the Non-Competition covenant and does not challenge the allegations of aiding and abetting by Njord's.

At this stage, the Court's inquiry is limited to whether the allegations in Count I pass muster under Federal Rule of Civil Procedure 8(a)(2). A breach of contract claim must allege the following elements: (1) a contract; (2) a breach of the contract; and (3) damages resulting from the breach of the contract. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). The parties do not dispute that the Non-Disclosure Agreement ("NDA") is a contract;[5] therefore, the first element is satisfied.

The questions then become whether and to what extent the Non-Disclosure and Non-Solicitation covenants were breached; and what, if any, damages Shores Global incurred from said breaches. "The answers to those questions involve a close examination of the facts, which the Court will not undertake at this stage." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1295 (M.D. Fla. 2018).

Shore Global's allegations, that Defendant Krenzen breached the NDA by using confidential information (which it identifies in the pleading) that he improperly obtained while employed by Shores Global and that, as a result, Shores Global suffered damages, satisfy Federal Rule of Civil Procedure 8(a)(2). The allegations of breach of the NDA

---

[5] The undersigned has already determined that Defendants' claim that the Agreements are void based on duress fails.

sufficiently put Defendants on notice of the claim against them and the grounds upon which that claim rests.

Similarly, Shores Global's allegations that Defendant Krenzen solicited three employees of Shores Global and several of its clients, vendors and suppliers, in violation of the Non-Solicitation covenant, which caused Shores Global damages are also sufficient to satisfy Rule 8(a)(2). Defendants' argument that the allegedly solicited employees were not employees of Shores Global or its subsidiaries, as required by the Non-Solicitation covenant, requires the Court to determine factual issues based on consideration of documents outside of the pleadings, which is improper at this stage. *See* Fed. R. Civ. P. 12(d) (in considering a motion to dismiss under Rule 12(b)(6), a court generally may not look to matters outside the pleadings); Fed. R. Civ. P. 10(c) (a district court may consider the allegations in the complaint and documents attached as an exhibit to the complaint).

Accepting the factual allegations in the Amended Complaint as true and viewing them in the light most favorable to Shores Global, the undersigned finds the allegations of breach of the NDA and Non-Solicitation covenant satisfy Rule 8(a), and Count I, therefore, is not subject to dismissal.[6] Challenges to the merits of these allegations may be addressed later in a motion for summary judgment.

---

[6] Shores Global also alleges in Count I that Defendant Njord's aided and abetted Defendant Krenzen's breaches of the agreements. A claim of aiding and abetting under Florida law requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by [the] alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 WL 4760277, at *8 (S.D. Fla. Sept. 30, 2018) (Williams, J.) (citation omitted). "In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing." *Id.* (citing *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012)). In Count I of the Amended Complaint, Shores Global alleges Njord's was "aware of the terms of the Agreements between Plaintiff and Defendant Krenzen" and Njord's "aided and abetted Defendant Krenzen's breaches of those Agreements by facilitating his illegal competition; misappropriation, disclosure, and use of

### 2.  Count II – Tortious Interference With Business Relationships

In Count II, Shores Global asserts a claim for tortious interference with several types of business relationships. Specifically, Shores Global claims Defendants intentionally interfered with its relationships with actual and prospective customers, clients, suppliers, and vendors. Am. Compl. at ¶¶ 88–89. The Amended Complaint alleges Shores Global had business relationships with Carnival Cruise Lines, Royal Caribbean Cruise Lines, and Norwegian Cruise Lines and that Defendants were aware of those relationships and intentionally interfered with "these relationships" by sabotaging them. *Id*. Shores Global also alleges Defendant Njord's interfered with its relationship with Defendant Krenzen by procuring Krenzen's breaches of his Agreements with Shores Global and that Defendants interfered with Shores Global's relationships with its employees by soliciting them. *Id.* at ¶ 90–91.

To state a claim under Florida law for tortious interference with a business relationship, the plaintiff must establish four elements: (1) the existence of a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional and unjustified interference with the relationship, and (4) damages resulting from the defendant's interference. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). As to the first element, "[a] protected business relationship need not be evidenced by an enforceable contract." *Id.* However, the business relationship must at least afford existing or prospective legal rights to the parties and embody "an actual and identifiable understanding" that the parties will do

---

trade secrets; and solicitation of employees, customers, and vendors by providing material assistance and resources to engage in such wrongful conduct." Am. Compl. at ¶¶ 79–80. Although Shores Global has plausibly alleged the elements of aiding and abetting, this Court may not exercise personal jurisdiction over Njord's and, therefore, the issue of whether Plaintiff alleges a claim of aiding and abetting is moot.

business together. *Id.* at 815. Accordingly, although a business's relationship with a past customer is not a protected relationship, an ongoing relationship with a current customer or a potential relationship with a future customer may be protected. *See id.* at 815, n.1; *Magre v. Charles*, 729 So. 2d 440, 444 (Fla. 5th DCA 1999). Moreover, it is well-settled that a business's relationship with the general consuming public is not protected; instead, the asserted relationship must be with an identifiable customer. *N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. 4th DCA 1994), *aff'd*, 687 So. 2d 821 (Fla. 1996).

Defendants argue that Shores Global's claim is vague and conclusory because the claim fails to identify the customers with whom its relationships were damaged and failed to identify projects bid upon by Defendants. Mot. at 24–25. Shores Global responds that it need not identify the customers and projects with such particularity at the pleading stage. Resp. at 20–21.

Initially, the undersigned observes that although a plaintiff need not plead an exhaustive description of each customer, it must at least plausibly allege the existence of those customers via some description. *See E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*, No. 8:10-CV-1870, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) (holding that business relationship with "several customers throughout the Southeastern United States" was sufficient to meet requirement of pleading "identifiable customers" for tortious interference claim).

The allegations in the Amended Complaint indicate Shores Global's identifiable customers, and, as such, the allegations, although lacking detail, do refer to a class of customers (specific cruise lines with which it has ongoing relationships) who could be identified rather than to the community at large. Shores Global additionally alleges that contracts with these customers were not completed due to Defendants' interference. These

allegations are sufficient to state a plausible claim for tortious interference. *Env't Sols. Ass'n v. Pro. Lab'ys, Inc.*, No. 13-61051-CIV, 2013 WL 12043499, at *4–5 (S.D. Fla. Dec. 9, 2013). However, the undersigned finds that Shores Global's tortious interference claim is impermissibly pled as a shotgun pleading. Specifically, Shores Global has incorporated claims based on interference by both Defendants with its customers, as well as claims based on interference by Defendant Njord's with Defendant Krenzen's employment, in addition to claims based on both Defendants' interference with Shores Global's other employees. "This type of [shotgun] pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts[.]" *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (internal citation omitted); *see also Env't Sols*, 2013 WL 12043499, at *5.

Accordingly, Count II should be dismissed without prejudice to the filing of an amended pleading that comports with Rules 8(a)(2) and 10(b).

### 3. Count III – Misappropriation Of Trade Secrets

In Count III, Shores Global alleges Defendants misappropriated Shores Global's trade secrets, in violation of the Florida Uniform Trade Secrets Act, Florida Statutes, Section 688.001, *et seq*. ("FUTSA"). According to the Amended Complaint, Defendants allegedly misappropriated the following trade secrets:

a. The names, buying habits, and purchasing practices of Plaintiff's cruise line customers;
b. The names of vendors, suppliers, and sub-suppliers Shores Global relies upon to create, build, and sell its furniture;
c. Client lists, client contacts, and key individuals working for the cruise lines that the Company utilizes to sell its products;
d. The prices the Company charges its clients, or at which it sells its furniture products (both in the past and prospectively);
e. The cost of materials for products the Company designs, creates and builds;
f. Marketing plans, techniques, methods and other client-driven data Plaintiff relies upon to sell its products to the cruise lines;
g. Compensation and/or revenue derived from each of the particular cruise lines; and

> h. Compensation paid to Plaintiff's employees, to include bonus structures and incentive plans.

Am. Compl. at ¶ 99.

The FUTSA provides a cause of action for the misappropriation of trade secrets. Fla. Stat. §§ 688.001–009. "To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citing *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017)). Under the FUTSA, a "trade secret" is:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). "Misappropriation" includes the:

> [d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]

Fla. Stat. § 688.002(2). "Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).

Shores Global alleges that it possessed the above-described trade secrets, that it derives significant economic value from these trade secrets, and that it took reasonable steps to protect them, including requiring its employees to sign confidentiality and non-disclosure agreements. Am. Compl. at ¶¶ 99–101. While a "plaintiff is required to identify with

reasonable particularity the trade secrets at issue before proceeding with discovery," to satisfy this requirement and survive dismissal in federal court, "the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (per curiam). Here, the list of trade secrets set forth in the Amended Complaint satisfies this standard.

In the Motion, Defendants argue that Shores Global's claim that the trade secrets are not known or readily available is conclusory and that Shores Global's client and customer lists, supplier information, and pricing are not protectable as trade secrets because they are publicly available. Mot. at 26. Under Florida law, customer lists constitute a "trade secret" provided: "(1) the list was acquired or compiled through the industry of the owner of the list and is not just a compilation of information commonly available to the public; and (2) the owner shows that it has taken reasonable efforts to maintain the secrecy of the information." *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72, 2017 WL 320830, at *2 (M.D. Fla. Jan. 23, 2017) (collecting cases). Shores Global alleges that its customer lists and trade secrets are not generally known or readily ascertainable and "allow[] it to maintain a competitive edge over its competition when bidding for contracts and other services." Am. Compl. at ¶ 100.  Although Defendants argue in the Motion that there is evidence indicating that the trade secrets, including customer lists, are publicly available and, therefore, not protected trade secrets, that information does not appear in the Amended Complaint, and accordingly, the Court cannot consider it when resolving a motion to dismiss. *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto."

(footnote and citation omitted)). Thus, Defendants' arguments regarding public availability are not a basis for dismissal. *Id.*; *see also Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) (King, J.).

Defendants also argue that Shores Global failed to adequately allege that it employs steps to maintain the secrecy of its alleged trade secrets. Mot. at 26–27. However, taking the allegations as true, Shores Global has alleged that it takes reasonable efforts to maintain the secrecy of its confidential information, including requiring employees to sign non-disclosure agreements. Am. Compl. at ¶ 101. At this stage, these allegations are sufficient. Moreover, whether a party has taken reasonable steps under the circumstances to preserve its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss. *See Treco Int'l*, 706 F. Supp. 2d at 1287 (citing *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) ("Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets.")).

Accordingly, Shores Global has sufficiently stated a claim for violation of the FUTSA, and, therefore, Defendants' Motion should be denied as to Count III of the Amended Complaint.[7]

### 4. Count IV - Conspiracy

In Count IV, Shores Global alleges Defendants conspired "with other individuals and entities to breach written agreements with Plaintiff, tortiously interfere with Plaintiff's business relationships, and to misappropriate Plaintiff's trade secrets." Am. Compl. at ¶ 107.

---

[7] As with the prior claims, this Court may not exercise personal jurisdiction over Njord's and, therefore, the issue of whether Plaintiff alleges a claim of violation of the FUTSA as to Njord's is moot.

Under Florida law, the elements of civil conspiracy include: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means; (3) the doing of some overt act to further the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy." *W.P. Prods., Inc. v. Tramontina USA, Inc.*, No. 18-63162-CIV, 2019 WL 10092981, at *8 (S.D. Fla. July 30, 2019) (Cohn, J.) (citing *GolTV*, 277 F. Supp. 3d at 1312; *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Moreover, civil conspiracy is not a stand-alone-claim but rather "the plaintiff must allege an underlying illegal act or tort on which the conspiracy is based." *Id.* (citing *Raimi*, 702 So. 2d at 1284). Additionally, "the Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged." *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *8 (S.D. Fla. Feb. 23, 2010), *aff'd*, 417 F. App'x 892 (11th Cir. 2011) (citation and quotations omitted).

Defendants argue that the conspiracy claim must be dismissed on grounds the claim is impermissibly vague and does not give Defendants adequate notice of who the alleged co-conspirators are and what the members of the conspiracy are alleged to have done in furtherance of the conspiracy. Mot. at 27–28. The undersigned agrees.

It is not clear from the allegations in the Amended Complaint who the alleged co-conspirators are. Nor does the Amended Complaint indicate that the co-conspirators entered into an agreement to engage in the allegedly unlawful acts. "An agreement between two or more parties occurs when there is an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020) (citation omitted). The Amended Complaint also fails to identify what each of the co-conspirators did to further or assist in the conspiracy. "Each

coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (quoting *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)).

Although the Amended Complaint alleges, both in the general allegations and in Count IV, that Defendants and the unidentified co-conspirators engaged in, or aided and abetted, some wrongful conduct or should have known that they were engaged in the wrongful conduct, allegations that the co-conspirators were "engaged in the same 'scheme,'" alone, are insufficient to state a claim for civil conspiracy. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (Bloom, J.).

In short, the civil conspiracy claim is impermissibly vague and inadequate and should be dismissed without prejudice for failure to state a claim.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion to Dismiss the Amended Complaint [ECF No. 59] be **GRANTED IN PART AND DENIED IN PART** as set forth above. Specifically, the undersigned finds that:

1. the Motion to Dismiss based on lack of personal jurisdiction should be denied as to Defendant Andreas Krenzen on grounds Plaintiff has sufficiently alleged personal jurisdiction pursuant to Section 48.193(a), Florida Statutes (contractual consent), and Section 48.193(1)(a)(2), Florida Statutes (commission of a tortious act in Florida);

2. the Motion to Dismiss based on lack of personal jurisdiction should be granted as to Defendant Njord's Ark;

3. the Motion to Dismiss based on *forum non conveniens* should be denied as to both Defendants; and

4. the Motion to Dismiss for failure to state a claim should be granted as to Counts II and IV and denied as to Counts I and III.

Accordingly, the undersigned recommends the Court **DISMISS** the Amended Complaint as to Defendant Njord's Ark A/S and that the Court **DISMISS** Counts II and IV of the Amended Complaint as to Defendant Andreas Krenzen for failure to state a claim.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 3rd day of February, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Raag Singhal, *U.S. District Judge*
Counsel of Record