UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20623-CIV-SINGHAL

SHORES GLOBAL, LLC,

    Plaintiff,

v.

ANDREAS KRENZEN,

    Defendant.
_____/

## **ORDER**

**THIS CAUSE** is before the Court upon Defendant Andreas Krenzen's ("Defendant" or "Krenzen") Motion for Summary Judgment (DE [177]). In the motion, Krenzen seeks summary judgment as to the two remaining counts in the Amended Complaint. Plaintiff Shores Global, LLC ("Plaintiff" or "Shores Global") opposes. For the reasons set forth below, Krenzen's Motion is granted in part and denied in part.

    **I.**    **BACKGROUND**

The Court begins with the relevant facts, taken in the light most favorable to Shores Global, the non-moving party. Founded in 2007, Shores Global primarily manufactures and sells furniture for cruise lines. As of 2021 when this case was filed, it had contracts to outfit over two hundred cruise ships in over thirty different countries.

Shores Global hired Krenzen in 2016 to work in its European office, located in Denmark. In May 2019, he was promoted to work alongside Shores Global's CEO, Susan Sadolin, in the Miami office. Shores Global claims that Krenzen's new position provided him access to its most important trade secrets and confidential information. Shores Global also says that Krenzen received highly specialized on-the-job training about how Shores Global runs its company. Accordingly, when Krenzen was promoted to the Miami

office, he was required to sign an employment agreement that contained certain restrictive covenants. Those covenants included restrictions against disclosing Shores Global's confidential information, against competing with Shores Global both during and for a period of time following Krenzen's employment, and against soliciting Shores Global's employees, customers, or vendors for a certain period of time.[1]

While Krenzen was employed and working for Shores Global, he began preparing and setting up a competing company, Njord's Ark.[2] Like Shores Global, Njord's Ark supplies furniture to cruise lines. Before leaving Shores Global, Krenzen recruited three of its employees to join him on the Njord's Ark business venture. These employees were Emil Rauff Sorensen, Morten Bang Larsen, and Palle Hansen. As early as March 2019, Krenzen, Larsen, and Sorensen discussed setting up Njord's Ark before eventually doing so in early 2020. Krenzen resigned from Shores Global effective January 1, 2020. Njord's Ark was incorporated in Denmark shortly thereafter.

The Complaint was filed in February 2021 (DE [1]) and the operative pleading, the First Amended Complaint was filed in April 2022 (DE [55]). The Court is the trier of fact as this matter is set for bench trial (DE [190]).

II.  **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[3] *see also Alabama v.*

---

[1] Any restrictive covenant is part of the employment bargain between the parties. It is not for the Court to know whether Krenzen would have been hired without the restrictive covenant for a greatly reduced salary, or if instead he would have then sought employment elsewhere.
[2] The company was never formally incorporated until after Krenzen left Shores Global and moved back to Denmark. Krenzen currently serves as CEO of this company.
[3] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

*North Carolina*, 560 U.S. 330, 344 (2010).  A factual dispute is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

The moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party's burden can be discharged either by showing an absence of evidence to support an essential element of the nonmoving party's case or by showing the nonmoving party will be unable to prove its case at trial.  *Celotex*, 477 U.S. at 325; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  In determining whether the moving party has met this burden, the court must consider the facts in the light most favorable to the nonmoving party.  *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

### III.   ANALYSIS

After a long and seemingly never-ending procedural history, the parties reached the summary judgment phase of this action with just one Defendant[4] and two claims remaining from the amended complaint (DE [55]): Count I for Breach of Contract and Count III for Misappropriation of Trade Secrets.  In its Motion for Summary Judgment, Krenzen advances various arguments as to why these claims should be dismissed.  The Court addresses them below.

---

[4] This case initially included another Defendant, Njord's Ark.  The Court, however, dismissed Njord's Ark for lack of personal jurisdiction.  *See* (DE [92]); (DE [172]).

### a. Count III: Misappropriation of Trade Secrets

Count III of Plaintiff's Amended Complaint argues that Krenzen violated the Florida Uniform Trade Secrets Act ("FUTSA"). To prevail on a FUTSA claim, "a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citations omitted). Under FUTSA, a trade secret derives independent economic value from not being known and not readily ascertainable, and where it is the subject of reasonable efforts to maintain that secrecy. Fla. Stat. § 688.002(4). To misappropriate a trade secret under FUTSA, an individual must, in some form, acquire or disclose a trade secret by improper means. *See* Fla. Stat. § 688.002(4).

A party seeking to establish the existence of trade secret has the burden to describe the trade secret with "reasonable particularity" and establish its existence. *See Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010). It also has the burden of establishing that it is has taken reasonable steps to defend that secret. *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998). Here, Plaintiff has failed to carry its burden in explaining and providing evidence of what its trade secrets are. In other words, there is an absence of evidence in the record to support its case. *See, e.g.*, *Celotex*, 477 U.S. at 325. The Court therefore grants summary judgment and Count III is dismissed.

Shores Global alleges that Defendant misappropriated various trade secrets, including information about customers, customer lists, pricing information, etc. (DE [55] ¶ 99). These assertions of "trade secrets," while sufficient to survive a motion to dismiss, are insufficient to survive summary judgment. Shores Global needed to provide the Court with factual evidence that shows, at the very least, that there is a genuine dispute of

material fact that Shores Global's proclaimed confidential information and trade secrets are in fact those things.[5] Shores Global's response to the summary judgment motion makes no attempt to do so. It merely states "Shores' customer information, pricing data, marketing strategies, and similar information fall within" Fla. Stat. § 688.002(4). But the Court is simply unaware of what these trade secrets are. And as Krenzen pointed out, Shores Global failed to produce—whether under seal or a protective order—any documents, evidence, or representative sample of its trade secrets. *See, e.g., Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Without such information in the record, the Court simply cannot allow this Count to proceed. The Court grants summary judgment to Defendant as to Count III.[6]

### b. Count I: Breach of Contract

Count I of Shores Global's Amended Complaint raises a claim for breach of contract. In the operative complaint, Shores Global claims that Krenzen breached the following three provisions in his employment agreement: (1) the non-compete provision, (2) the non-solicitation provision, and (3) the non-disclosure provision. In his summary judgment motion, Krenzen first claims that the entire employment agreement should be deemed void because he signed it under economic duress. Alternatively, he claims that Shores Global has not proffered any evidence that he breached these three provisions. Even if he did breach these provisions, he further claims these breaches have not caused

---

[5] For an example, as to customers lists, Shores Global needed to show that the "list [wa]s acquired or compiled through the industry of the owner of the list and not just a compilation of information commonly available to the public." *See Bridge Fin., Inc. v. J. Fischer & Assocs., Inc.*, 310 So. 3d 45, 48 (Fla. 4th DCA 2020) (citation omitted).

[6] Because the Court finds that Shores Global did not describe its trade secrets with reasonable particularity, it need not resolve whether there is sufficient evidence in the record that shows it took reasonable steps to defend those trade secrets.

Shores Global damages. Lastly, Krenzen argues that to the extent any breach caused Shores Global damages, it has not presented any evidence of what those damages are. The Court addresses these arguments below.

### i. Duress

Krenzen argues that his employment agreement, the contract underlying Shores Global's claim for breach of contract, should be declared void because he signed it while under economic duress. Krenzen maintains that Shores Global forced him to sign his employment agreement under the threat of revoking his visa and having him deported. (DE [178] ¶ 8). Shores Global contends that Krenzen, when signing the updated employment agreement, simply experienced difficult financial circumstances that does not amount to economic duress.

It is difficult for a party to make out a successful case for economic duress. *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 503 (S.D. Fla. 2000). "A contract is [only] voidable where undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making the agreement." *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir. 1978). The doctrine "applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto." *Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229, 1236 (11th Cir. 2007). "[T]he mere fact that a person enters into a contract as a result of the pressure of business circumstances, financial embarrassment, or economic necessity is not sufficient. Unless wrongful or unlawful pressure is applied, there is no business compulsion or economic duress" *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir. 1978).

Krenzen argues that he signed his employment agreement under economic duress because, upon uprooting his life and moving to America, he was forced to sign a new employment agreement that for the first time contained non-compete, non-disclosure, and non-solicitation provisions.  Krenzen explains that when he was hired to work at Shores Global in 2016, he was living in Denmark, his employment agreement was in Danish, and the agreement did not contain any of these provisions.  But when he moved to America, he was presented with a new agreement in English that now contained these three provisions.  Krenzen says he was further told that if he did not sign, he would be fired and his visa would be revoked.  Krenzen explains this amounted to unlawful pressure and economic duress, rendering the entire employment agreement void.

Shores Global's responds that Krenzen has not described a scenario that satisfies the high bar necessary for a successful case of economic duress; at the bare minimum, it argues there is a factual dispute warranting denial of summary judgment.  Shores Global contends that Krenzen's claims that he signed the employment agreement under threat of deportation are unsubstantiated.  Shores Global's CEO, Susan Sadolin, states that "no such threats [of firing or deportation] were ever made and that Krenzen willingly signed the agreements without protest after having ample opportunity to review and negotiate their terms."  (DE [193] ¶ 4).  And to the extent Krenzen felt pressured to sign the agreement, Shores Global contends that the circumstances that Krenzen signed the agreement under merely describe a difficult financial circumstance or unequal bargaining power, both of which are insufficient to void a contract.

Because the parties dispute the factual circumstances surrounding the signing of Krenzen's employment agreement, and because the dispute is based on Krenzen's and Sadolin's individual testimony, there is a factual dispute surrounding the circumstances

7

of Krenzen's signing of his employment agreement which should not be decided at summary judgment. The parties clearly have different recollections of the circumstances surrounding the signing of the contract, and with no evidence in the record, outside the declarations of the parties, indicating which version is the correct or more credible one, the Court cannot conclude that no genuine dispute of material fact exists on this point.

### ii. Non-Compete Provision

Krenzen claims that there is no evidence that he breached the non-compete provision of his employment agreement. He claims that Shores Global has not offered any evidence that he breached this provision during the 18-month restricted period following his employment, and that even if he did, any breach was not within the geographic scope. Shores Global counters that he did compete against the company in violation of the employment agreement. Because factual disputes exist as to whether Krenzen breached the non-compete provision, the Court denies summary judgment on this issue.

To start, it is necessary to clarify the "Restricted Period" during which Krenzen could not otherwise compete with Shores Global, as Krenzen seems to think it only applies to the period of time following his employment with Shores Global. The "No Competition" covenant in Krenzen's employment agreement clearly states that he cannot compete with the company during the "Restricted Period."[7] (DE [55-1] at 20). This period "*includes the period of Employee's employment with Company* and an additional period of 18 consecutive months . . . ." (DE [55-1] at 20) (emphasis added). The covenant not

---

[7] Though it is not clear from the employment agreement, the "Restricted Period" appears to also apply to the non-solicitation of clients provision of Krenzen's employment agreement. *See* (DE [55-1] at 21) (referring to the "Restricted Period" but not explicitly defining it in the context of that provision).

to compete therefore includes the period of time during Krenzen's employment with Shores Global and the 18-month period following his departure.

Next, it is helpful to outline the scope of the non-compete provision in Krenzen's contract. It states, in relevant part, that Krenzen cannot "affiliate with any Competitor" or "own, manage, operate, control, or participate" in a Competitor's business. (DE [55-1] at 21). A Competitor is described as "any other person . . . engaged . . . in a business the same or similar to the business of" Shores Global. (DE [55-1] at 21). With this understanding of the covenant not to compete, it is easy to see that, at minimum, factual disputes exist as to whether Krenzen breached this provision.

There is record evidence that Krenzen worked to set up Njord's Ark while he was still employed at Shores Global. For example, there are emails and communications that appear to show Krenzen setting up Njord's Ark, preparing presentation materials for the company, and discussing board composition, logistics arrangements, and marketing materials all while he was employed at Shores Global. *See* (DE [193] ¶¶ 6-7). This evidence tends to show that Krenzen was, at the very least, "participating" in a competing business while he was employed at Shores Global. And since the Restricted Period includes the time that Krenzen worked at Shores Global, there is enough in the record to shows a genuine dispute as to whether Krenzen violated the non-compete provision of

his employment agreement.[8]  Accordingly, this issue should not be resolved at summary judgment.[9]

### iii. Non-solicitation Provision

Krenzen next claims that there is no evidence that he breached the non-solicitation provisions of his employment agreement.  He claims that he never solicited any of Shores Global's customers, employees, vendors, or suppliers.  (DE [178] ¶¶ 19, 23-24, 27).  Shores Global maintains that he has.  Because there is evidence that tends to show that Krenzen solicited Shores Global's customers, employees, and vendors, the Court denies Krenzen's request for summary judgment on this issue.

There are two non-solicitation provisions in Krenzen's contract.  The first provision prevents Krenzen from soliciting or hiring Shores Global's or its subsidiary's employees within 18 months of that employee leaving the company.  (DE [55-1] at 21, Section 8).  The first provision, however, does not prevent Krenzen from hiring a former Shores Global employee if that employee responded to a general or public solicitation of prospective employees (i.e., a job posting).  (DE [55-1] at 21, Section 8).  The second non-solicitation

---

[8] The Court acknowledges that the Employment Agreement defines Competitor as

> Specifically include[ing] persons engaged in the business of selling furniture to cruise lines and hotels in any . . . jurisdiction of the United States and, additionally, from all other countries of the world where the Company derives at least five percent (5%) of its gross revenues from such geographic area prior to the date of the termination of [the employee] with [Shores Global].

(DE [55-1] at 21, Section 6).  The Amended Complaint alleges that Shores Global derives more than 5% of its gross revenues from cruises lines operating in and around Denmark, but there does not appear to be any record evidence of that is the case.  The Court, however, clearly does not find that this evidentiary gap changes the outcome of this Order.  Construing this provision in the light most favorable to Shores Global, the plain reading specifically includes geographic regions where the Company derives at least 5% of its revenue, but it does not exclude regions where the Company does not. Thus, for purposes of this motion, it does not matter that Shores Global has not put forth evidence that it derives 5% of its revenue from Denmark, where Njord's Ark apparently operates.

[9] The Court is aware of the Federal Trade Commission's recent final rule that bans non-competition agreements nationwide. *See* 16 C.F.R. § 910.  But since the rule does not take effect until September 4, 2024, the Court must rule as if non-competition agreements are valid and enforceable.

provision forbids Krenzen, during the Restricted Period, from soliciting any of Shores Global's or its subsidiaries' clients, customers, or suppliers.  (DE [55-1] at 21, Section 9).

In the Motion for Summary Judgment, Krenzen's argument consists only of the following claim: there is no evidence that he breached either of these provisions, "nor was there interference with any suppliers."  (DE [177] at 8) (citing paragraphs 19, 23, 24, and 27 of his statement of facts).  In his statement of facts, he repeats these claims, stating that he never solicited Shores Global's customers, employees, suppliers, or vendors. *See* (DE [178] ¶¶ 19, 23-24, 27).  As evidentiary support for this argument, he primarily cites to his own declaration in support of his Motion for Summary Judgment ("Krenzen Declaration" filed at (DE [178-1]).  *See, e.g.*, (DE [178] ¶ 23) (citing paragraph 27 of the Krenzen Declaration).  In support of his position that he did not solicit Shores Global's former employees, he also cites to the declarations of Emil Sorensen, Morten Larsen, and Palle Hansen, all former Shores Global employees who state they left Shores Global on their own volition and were not poached or solicited by Krenzen.  *See, e.g.*, (DE [59-4] ¶ 6) (Declaration of Morten Larsen).  In sum, Krenzen's evidence that he did not violate the non-solicitation provisions of his employment agreement comes entirely from the declarations of himself and his fellow employees.

In response, Shores Global contends that there are genuine disputes of material facts as to each of Krenzen's claims.  Beginning with Krenzen's claims he never solicited former employees, Shores Global's CEO, Susan Sadolin, states in her declaration that Krenzen improperly solicited his fellow employees and that his poaching decimated Shores Global's workforce.  (DE [193] ¶ 12).  As to Krenzen's claims that he never solicited Shores Global's customers and clients, Shores Global argues there is evidence that he did.  As examples, it presents evidence of Krenzen writing in a Whatsapp Chat to

11

Sorensen and Larsen that he had a meeting with the Chief Architect at Carnival Corporation on behalf of Shores Global, but that he was going to "try and [put] some feelers out." (DE [193-6] at 4). A week later he writes in the same chat "Didn't drop any big bombs tonight. However, more people at the dinner know we need to have a one-to-one chat soon." (DE [193-6] at 4). Both of Krenzen's messages in the Whatsapp Chat occurred while he was an employee of Shores Global and therefore within the Restricted Period.

As to Krenzen's solicitation of vendors or suppliers, Shores Global offers evidence that in November 2019, Krenzen sent a bank a business plan that identified that its competitive advantage lays, among other things, in its knowledge of suppliers worldwide. *See* (DE [167-12] at 3). According to Shores Global, this evidence shows that Krenzen intended to leverage and utilize his knowledge and connection with the suppliers he developed while at Shores Global for Njord's Ark business.[10]

In evaluating this evidence, particularly in the light most favorable to Shores Global, the Court finds that there is sufficient evidence of a factual dispute to deny summary judgment on the breach of non-solicitation provision. Krenzen's only evidence that he did not violate the two non-solicitation provisions are either his own or his fellow Njord's Ark founders' declarations. Shores Global's evidence to the contrary are its CEO's declaration and Krenzen's own statements that imply, but do not confirm, that he was meeting with Shores Global's customers. At bottom, the two parties dispute the facts, so granting summary judgment as to this particular issue would be improper.

---

[10] It's important to note that this same information could arguably support a Misappropriation of Trade Secrets (Count III) claim. But as discussed earlier there is no record evidence that this information was secret, developed through the work of Shores Global, and not readily available in the public domain.

Krenzen also argues that this Court should not consider Shores Global CEO's statements as evidence and that those statements are insufficient to prevent summary judgment. (DE [198] at 5). Krenzen, however, is wrong. It is well established, at least in this Circuit, that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). Moreover, Krenzen's argument is confusing because he claims that the Court should not consider Shores Global's CEO's self-serving statements but that it should take Krenzen's own self-serving statements as a matter of fact. That would be plainly inconsistent; if the Court cannot consider CEO Sadolin's statements, it cannot consider Krenzen's or his fellow Njord's Ark employees. Krenzen cannot have it both ways.

### iv. Non-Disclosure

Krenzen next claims that he did not violate any duty not to disclose confidential information. He claims that Shores Global does not maintain confidential and proprietary materials and that they have voluntarily disclosed their "proprietary" customer lists to other parties. Shores Global maintains that it has confidential information and that Krenzen disclosed it. At the very least, it argues that there is a sufficient genuine dispute of material fact as to these issues that warrants denying summary judgment.

Because the Court granted summary judgment as to Count III, Shores Global's FUTSA claim for misappropriation of trade secrets, it will do so here as well. Plaintiff has simply not provided any evidence as to what its confidential information or trade secrets are. Without that information, the Court cannot allow this claim to proceed on the theory that Krenzen breached the non-disclosure of confidential information provision of his

employment agreement. Accordingly, summary judgment is granted to Krenzen as to Shores Global's specific non-disclosure theory of breach of contract of this provision.

### v. Causation and Damages

Shores Global's claims that Krenzen breached the non-competition and non-solicitation provision of his employment agreement survive summary judgment. But whether Count I, Shores Global's claim for breach of contract, can survive summary judgment is dependent on whether it has also (1) adequately alleged that these contractual breaches caused them damages and (2) provided evidence that allows the trier of fact to calculate those damages. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) *Dixon v. Univ. of Miami*, 75 F.4th 1204, 1208 (11th Cir. 2023) ("Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.").

Krenzen argues Shores Global cannot show that any alleged breach of his employment agreement caused them damages. He argues there is no evidence that, to the extent Shores Global's business struggled to secure contracts and bring in revenue, it had anything to do with his actions. He further argues that even if his breach of the employment agreement caused Shores Global damages, it has failed to provide any evidence for the Court to evaluate what those damages are. Shores Global counters that it has, and that at trial it will be able to produce evidence that it lost bids, employees, customers, and its competitive advantage.

It is self-evident that when an employee breaches a non-compete or non-solicitation provision it causes their employer damages. These types of provisions are generally inputted into employment agreements so that companies can protect their confidential information and business advantages. In essence, they prevent an employee

from learning a company's entire business, leaving, and then immediately setting up a competing business. This holds true here. If it is proven at trial that Krenzen competed against Shores Global and solicited its clients, customers, and former employees, it is only logical that Shores Global would have suffered damages as a result. The only remaining question, then, is whether there is sufficient information in the record for the trier of fact to calculate and award damages.

A party seeking to recover damages must show that "there is some standard by which the amount of damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). This standard does not require a party to show the exact amount of damages it suffered. *See Simmons v. USI Ins. Services, LLC*, 2024 WL 946311, at *5 (M.D. Fla. Mar. 5, 2024). But, a party still must present evidence that presents "reasonable estimates or evidence that is indirect and based on assumptions, so long as the assumptions rest on adequate data." *Marshall Auto Painting & Collision, Inc. v. Westco Eng'g, Inc.*, 2003 WL 25668018, at *12 (M.D. Fla. May 8, 2003) (citing *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.,* 943 F.2d 1511, 1518 (11th Cir. 1991)).

Shores Global argues that has presented sufficient proof of damages to defeat summary judgment. It argues that its CEO has provided evidence of the following damages:

> (1) a direct financial loss of $30,000 due to unauthorized price reductions; (2) substantial damages through the loss of established customer relationships, estimated to be in excess of $100,000; (3) damages due to misappropriation of confidential and proprietary information, conservatively estimated at $250,000; and (4) damages related to cyber intrusion and data theft, estimated at $75,000

(DE [192] at 6-7) ((citing (DE [193]) (Statement of Disputed Facts)) (internal citations omitted). But Shores Global's only evidentiary support for these damages are its CEO's

15

deposition testimony and declaration. Under Florida law, these reasonable estimates would be sufficient so long as they rested on adequate data. *See Marshall Auto Painting & Collision*, 2003 WL 25668018, at *12. But Shores Global has failed to provide the Court with *any* underlying data. There is no evidence of one lost contract or business opportunity, no evidence of bids that it lost to Njord's Ark, and no evidence or data showing business losses from established customer relationships. The only evidence are the statements of Shores Global's CEO. Under Florida law, this is insufficient.[11]

Shores Global also essentially concedes that it has not provided the underlying data. It claims that it "will be able to present evidence at trial that it lost bids, employees, customers, and competitive advantage due to Krenzen's contractual breaches." *See* (DE [192] at 7). But Shores Global cannot present new evidence at trial that would provide a reasonable basis for awarding damages. The time to produce and present this information was in discovery and at summary judgment. But it has failed to do so. Notwithstanding the apparent lack of evidence of damages, the Court will let Count I proceed but limit damages as follows. Plaintiff may present evidence of (1) a direct financial loss of $30,000 due to unauthorized price reductions; and (2) substantial damages through the loss of established customer relationships, estimated to be in excess of $100,000. This ruling does not however preclude the defense from arguments relating to discovery and disclosure of underlying data that may further limit this issue.

---

[11] While the Court has explained that an individual's declaration is otherwise sufficient to demonstrate a genuine dispute of material fact as to whether Krenzen breached his employment agreement, when it comes to damages, Florida law clearly requires more. It requires some form of underlying data to support the damages amount. It is for this reason that Susan Sadolin's deposition testimony and declaration are insufficient to create a genuine dispute of material fact by damages but are otherwise sufficient to do so in the context of whether a breach occurred.

### c. Injunctive relief

Krenzen argues that even if there was a breach of contract, injunctive relief is unavailable because the Restricted Period, which lasted for 18 months following his employment, has long expired. Shores Global argues that it is nonetheless within the Court's discretion to award injunctive relief. But since Shores Global provides no authoritative support for its position, the Court grants summary judgment and denies the availability of injunctive relief in this case.

Krenzen left Shores Global on January 1, 2020; the Restricted Period therefore ended on July 1, 2021. Shores Global never moved for a preliminary injunction in this case nor has it requested an extension of the Restricted Period. The employment agreement also does not contain a provision that extends the Restricted Period upon a court finding of a breach of the contract. In short, the Restricted Period has long expired, and Krenzen argues that Shores Global provides no basis for extending that period.

Shores Global counters that injunctive relief should be available to prevent ongoing unfair competition. It says there is no rule in Florida preventing this Court from providing this relief. It also cites a case from the Southern District of Florida that Shores Global claims provides this Court discretion to grant injunctions even after the expiration of a non-compete period.[12]

The Court finds Shores Global's arguments unpersuasive. Over three years has passed since the end of the Restricted Period, and Shores Global has not put forth any compelling case as to why injunctive relief is necessary. Moreover, like Krenzen, the

---

[12] *See Vital Pharms., Inc. v. Prof'l Supplements, LLC*, 2011 WL 13319341 (S.D. Fla. Nov. 17, 2011). The problem is this case does not exist. The closest case with similar party names in that decade seems to be *Vital Pharms., Inc. v. Prof'l Supplements, LLC*, 210 So. 3d 766 (Fla. 4th DCA 2017) but that case does not stand for the proposition cited. In light of the remainder of the arguments, the Court assumes this was some kind of typographical error.

Court is unable to locate the one case that Shores Global cites as authority for this Court to grant the injunctive relief it requests.  The Court therefore grants summary judgment in favor of Defendant on this issue and finds that equitable relief is unavailable.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment (DE [177]) is **GRANTED in part and DENIED in part**.  This case will proceed to trial on Count I: Breach of Contract as limited by this Order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 2nd day of August 2024.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF